**Elsie K. GEISEL, Appellant,**

**v.**

**Russell HAINTL, Respondent.**

**No. 52775.**

Supreme Court of Missouri,
Division No. 1.

May 13, 1968.

Burton H. Shostak, Hoffman & Shostak, St. Louis, for appellant.

Heneghan & Roberts, Robert G. Burridge, St. Louis, for respondent.

SEILER, Judge.

The jury found for the defendant in plaintiff's $17,500 damage suit and she appeals. Her first amended petition charged that in descending a short flight of outside steps at defendant's residence she lost her balance and fell because of a wobbly handrail which defendant maintained in an insecure condition without warning to plaintiff. Plaintiff submitted her case to the jury by an instruction requiring, among other things, findings that "there was an insecure handrail on the steps of defendant's porch and as a result the handrail was not reasonably safe for persons walking down said steps" and that "defendant either failed to use ordinary care to remedy it or to warn of it".

The point presented by plaintiff on appeal is that the trial court committed prejudicial error and abused its discretion in permitting the jurors to pull on a small hand scale which had been introduced in evidence (plaintiff's brief refers to the scale as "the type one would find in a fishing box"), so as to see "how much pounds twenty-five is". The evidence which bears on this point is as follows:

According to the plaintiff's evidence, plaintiff, age 66, was keeping house for her nephew, the defendant, while his mother, who was plaintiff's sister, was in the hospital. In exchange the defendant, a painter, was to paint a bedroom for plaintiff. On the evening of the accident plaintiff and defendant were starting to the hospital from defendant's residence. There was a small landing on the north side of the house, just outside the kitchen door, with four wood steps from the landing to the sidewalk. These steps were about 4 feet wide, with what appear from the photographs to be treads and risers of usual size and height. The south end of the steps butted against the house. At the north end of the steps, running from the landing to the bottom step, was a wood 2 x 4 handrail, about waist high, fastened at one end to an upright post on the landing and at the lower end to an upright partly cut into the bottom step.[1] The steps were wet from a recent rain. Plaintiff was wearing a wedge type shoe, leather soles, with heels about an inch high. She was carrying a pocketbook in her left hand and started down the steps, alone, with her right hand on the railing. She had

---

1. Defendant's evidence was that this upright, a 2 x 4, was nailed into the stair jack or risers at the level of the first step and again at the level of the second tread.

her left foot on the last step and was in the act of stepping with her right foot to the walk, when, she testified, the handrail gave way to the right, causing her to lose her balance and fall, injuring herself. Plaintiff indicated to the jury with her hands how far the rail gave when she lost her balance. In answer to her counsel's question, "You are indicating some three or four inches?", she replied, "Yes."

Plaintiff called a consulting engineer, Edward W. Bilhorn, who testified to an examination he made of the landing and railing. He testified that " * * * if one placed his hand on the handrail in the normal process of descending, that the handrail was free and capable of being moved laterally, that it would move from left to right with a person descending approximately half an inch in the normal application of force—either way from its normal at rest position." He made tests "to determine the stability of the handrail for lateral motion". By placing his hand on the handrail near the bottom he exerted lateral pressure, which he said "would not exceed twenty pounds in either direction", first to the right (away from the house), then to the left (toward the house). He found "a total displacement of approximately an inch and three-quarters". Plaintiff introduced into evidence two photographs showing the witness making these measurements. These photographs show the witness standing on the second step from the top, bending forward, holding an extension ruler in his left hand, horizontally, with one end against the wall of the house and the other end on the handrail; with his right hand the witness is grasping the handrail about a foot or so above the bottom end. In one photograph he is exerting lateral force to his right, in the other to his left, and a comparison of the position of the edge of the railing on the graduations of the extension ruler in the two photographs shows the lateral displacement between one extreme and the other.

When asked on cross-examination how he knew the force was about 20 pounds he said that "if I rested my hand on a scale, for example, and leaned against it, I happen to know it's about twenty pounds" and that he tried not to apply a force greater than would be normal in ascending or descending the steps.[2]

Defendant countered with another consulting engineer, Frederick Baggerman, who inspected the landing and the railing for defendant. He tested for the amount of lateral movement in the railing by fastening a small spring scale, hand size, to the rail and then applying a lateral load, first away from the house and then toward the house. The spring scale in question had a calibrated face, graduated uniformly from zero to 25 pounds, with a movable pointer. There was a ring at the top of the scale by which it could be held. At the other end was a blunt hook attached to the spring mechanism. By holding the ring at the top and pulling on the hook at the bottom the pointer would move and the amount of

2. Plaintiff's expert also said the railing should have been strengthened and further stabilized by having an additional upright halfway between the end uprights with additional nailing at the middle step, and that the upright at the lower end of the steps should have been firmly affixed to or set in the concrete sidewalk.

Plaintiff's expert said the concrete at the foot of the steps had shrunk away from the upright, "exposing a void". Defendant testified that in the summer of 1965, before either set of tests, he had added about a quarter of an inch of concrete around the base of the upright, as a part of putting some concrete under the steps to fill a recess or offset where dirt and leaves would collect and be hard to sweep out. This fact of concrete being put in after the fall was apparently known to counsel on both sides and was first mentioned by plaintiff's counsel during his examination of his expert, without objection by defendant. In cross-examination of defendant's expert, mention was several times made of the fact that concrete had been poured around the post and the witness said this would add stability and lessen the lateral deflection.

force applied in pounds could be read on the scale. The witness put a loop of heavy twine around the upright supporting the lower end of the railing. He then engaged the hook in the loop. He tied another piece of twine to the ring in the other end of the scale and by pulling on the twine applied a load of 25 pounds to the handrail laterally, first away from the house and then towards the house, and measured the position of the handrail each way with respect to its position with no load. Defendant put in evidence two snapshots of this test being made. In one snapshot the twine is slack and in the other it is tight, with the scale showing 25 pounds pull and the extension ruler showing a lateral displacement of the rail to the right of half an inch. Using the same arrangement and with the same amount of pull toward the house the deflection was five sixteenths of an inch, for a total movement of slightly under an inch.

The scale in question was identified by the engineer and he referred to it in his testimony. It was marked as an exhibit, offered in evidence by defendant, and admitted without objection by plaintiff. Then as the photographs and scale were passed to the jury, defendant's counsel asked the jurors to pull on the scale and "see how much pounds twenty-five is". The record does not show how many jurors pulled on the

scale, but at least one did. The record does not show how the pulling was done by the jurors, whether one held and another pulled, or whether they hooked the scale on some projection and pulled, or whether jurors simply held the scale in one hand and pulled with the other. Plaintiff objected on the ground that the jurors were in a different position, they were seated, not upright and stepping downward or leaning on anything with the weight on one foot, that they were pulling on the scale, not pushing against something, that this was in no way similar to anything that occurred at the time of the fall and that the entire procedure was misleading and prejudicial, which objection was overruled.

Defendant's position is that the scale was offered in evidence not as a test of what plaintiff had or had not done, but to supply an objective standard to clarify the conflicting findings of the two engineering witnesses who had made tests as to the lateral movement in the handrail, which bore on the question before the jury as to whether the amount of movement existing in the handrail was of such magnitude as to be a dangerous condition.[3]

◼ Neither side has been able to find a case closely in point on the facts, nor have we. However, on general principles of trial practice and evidence we do not be-

---

3. Defendant denied the rail was wobbly. At the most, he said the rail had a "very slight give" of a quarter of an inch each way, "a slight jerk, yes sir", it was "slightly loose". Defendant also had evidence bearing on his defense of denial of negligence and contributory negligence as follows: At the time of plaintiff's fall, Velma Haintl, defendant's sister-in-law, was present. She testified that defendant told plaintiff to be careful, and for her to hold on to the banister, that it had been raining and the steps were slick; that plaintiff held on to the railing until she reached the last step but then she let go of the railing and it was after this that she fell (In his jury argument counsel for plaintiff took the position the case turned on whether plaintiff took her hand off the rail voluntarily and decided to take the last step without using the rail). Defendant also produced evidence

from hospital records indicating plaintiff had told the doctors she had slipped off the step or had missed the step. Defendant also offered as admissions against plaintiff portions of her deposition testimony to the effect that about two months before her accident plaintiff had noticed the railing was loose. Plaintiff at the trial denied making the statement.

Plaintiff's injuries were to her left ankle. On direct examination she denied any previous disabling injuries. On cross-examination, defendant showed a previous injury to the left leg in 1961 in an automobile accident and a settlement of $990.84, although plaintiff insisted the injury was to her right leg. Defendant produced an insurance claims manager with the claim file on the automobile accident. He testified the 1961 injury was to the left knee.

lieve what the court permitted the jurors to do was error. Plaintiff's expert was the first to mention the amount of lateral force applied in terms of pounds. He said he applied about 20 pounds and found a total of an inch and a half of lateral movement. Defendant's expert made the same type of test, but he used a spring scale to measure in pounds the force applied. By application of 25 pounds of lateral force so measured, he found a lateral movement of half an inch to the right and about five sixteenths of an inch to the left, not quite an inch altogether. Thus, by application of 25 percent greater force he nevertheless found about 33⅓ percent less lateral movement. This result and the scale he used to measure the force were bound to be of legitimate interest to the jury. By holding the scale by the ring in one hand and pulling on the hook with the other, the jurors could determine for themselves how much lateral force defendant's expert had applied. They were doing just about the same thing with the scale that defendant's snapshots, which were in evidence without objection, showed defendant's engineer doing. No sound reason appears why the jurors should not see and feel this force for themselves instead of being wholly dependent upon what was said about the amount of force applied. The force applied has a rational, probative value on the issues of how much lateral movement existed in the handrail and the credibility of the witnesses. It is true the force exerted on the scale, both by defendant's expert and the jurors, was a pulling, not a pushing, force. But as to the amount of lateral movement in the handrail, we see no difference in 25 pounds of pull or 25 pounds of push. In either case, a lateral force of 25 pounds is applied to the rail. From their tests the jurors might conclude there was not as much movement in the rail as plaintiff and her expert witness contended.

The case presents an application of what Wigmore on Evidence refers to as one litigant furnishing a source of belief by "Autoptic Proference". " * * * [W]here the existence or the external quality or condition of a material object is in issue or is relevant to the issue, *the inspection of the thing itself, produced before the tribunal, is always proper,* provided no specific reason of policy or privilege bears decidedly to the contrary * * *", Wigmore on Evidence, Vol. IV, § 1151, pp. 240–241, cited with approval in State v. Wynne, 353 Mo. 276, 182 S.W.2d 294, 299. What occurred here also is an example of what Wigmore refers to as "Non-Verbal Testimony", with the observation, "Man does not communicate by words alone; and it may occur that words become inferior to action as a mode of communicating a correct impression of a scene observed", Id., Vol. III, § 789, p. 172.

■ What the jurors did was a combination of test and experiment. Usually the matter of permitting experiments performed by witnesses in court is a matter within the sound discretion of the trial judge, Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918, 921. As to tests by the jurors, other courts have permitted such tests, or their equivalents, in situations where, as here, the test made is simple and direct. For example, in cases involving illegal sale of liquor, courts have permitted jurors to look at and smell the alleged intoxicating beverage and one court said if the jurors had tasted it, it would not have been error, Enyart v. People, 70 Colo. 362, 201 P. 564; People v. Kinney, 124 Mich. 486, 83 N.W. 147. In a federal case involving a libel to forfeit 350 cartons of canned sardines, allegedly adulterated, the court in Van Camp Sea Food Co., Inc. v. United States (C.C.A. 3) 82 F.2d 365, 371 said " * * * opening cans before the jury and allowing them to try the homely but practical test of smelling and tasting the sardines" was " * * * the most practical and conclusive proof that could have been adduced * * *." In People v. Constantino, 153 N.Y. 24, 47 N.E. 37, a murder trial, in the charge to the jury on the elements of premeditation and deliberation, where there was proof that the defend-

ant stood with pistol in hand in front of deceased, threatening him, for a half a minute to two minutes, the trial court took out his watch and showed the jury the passage of a minute of time. On appeal the court held this was not error. See, also, Hutchinson v. Richmond Safety Gate Co., 247 Mo. 71, 152 S.W. 52, 61, where the witness repeated in the same degree of loudness the words, "Look out below!", to show the nature of a warning given.

■ Finally, even if we were to assume that the test made by the jurors was inadmissible as a comparison because the jurors in pulling on the scale were in a different position and were exerting force in a different direction than plaintiff,[4] this does not destroy the fact that the evidence was material, relevant and competent on the issues discussed above, and hence admissible under the well established rule governing admission of evidence which is applicable to more than one purpose. "* * This court has ruled that evidence which is

admissible for any purpose cannot be excluded simply because it is inadmissible for other purposes, and, where the evidence is competent for any purpose, it is the duty of the trial court to admit it when offered * * *", Cazzell v. Schofield, 319 Mo. 1169, 8 S.W.2d 580, 590; see also, Johnson v. Minihan, 355 Mo. 1208, 200 S.W.2d 334, 337; Wigmore on Evidence, Vol. I, 3rd Ed., § 13, p. 300. If plaintiff desired to limit the extent to and purpose for which the jury should have considered the scale and its measurement qualities, she should have asked the court for a limiting instruction and her failure to do so is a waiver, Dyer v. Globe-Democrat Publishing Co. (Mo. Sup.) 378 S.W.2d 570, 581; City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003, 1009.

The judgment is affirmed.

HENLEY, P. J., STORCKMAN, J., and HAYES, Special Judge, concur.

---

4. We note in this connection no attempt was made by defendant to argue to the jury the test made by the jury should convince them plaintiff could not have been exerting enough force to move the rail 3 or 4 inches. Defendant's only reference to the 25 pounds was that it gave the jury an idea of how much force that was and how much force 20 pounds was.