Carl BILLINGS, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26363.

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

Willard B. Bunch, Public Defender, 16th Judicial Circuit, B. William Jacob, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOF-FORD and WASSERSTROM, JJ.

SHANGLER, Presiding Judge.

The defendant was convicted of arson under § 560.010, RSMo 1969, V.A.M.S., and was sentenced to imprisonment for a term of twenty years. On this appeal, the defendant does not question the sufficiency of the proof, so a shortened recital of the evidence is adequate to meet the points in issue.

In the early morning of July 9, 1971, defendant Billings was riding around in a 1962 Buick automobile with white body and black top owned by Glenn Terry, who was driving. They were on a carouse drinking beer from bar to bar. The automobile was distinctive because the right side was caved in and had neither bumper nor muffler, so that when in operation, it made the sound of a racing car. According to Terry, when they reached the vicinity of a residence known to Terry to be that of Mr. and Mrs. Bradford, Billings directed him to stop the car. Billings then retrieved a large pop bottle from the back seat, lit the wick, walked to the Bradford residence, and tossed the flaming bottle through the picture window. The house came ablaze. Billings ran back to the car which took off as fast as it would go. The noise of the car and the crash of the glass attracted Mrs. Bradford to the window of the sleeping porch on the second floor where she had been lying. She saw a light colored car with a dark top pulling away from just below her window and recognized defendant Billings occupying the passenger side facing the house. She had seen him many times before. [There had been animus between the Bradfords and the defendant Billings from the sale of a house for which the defendant refused to pay and whose possession he relinquished only after he had despoiled the plumbing.] Mrs. Bradford ran downstairs and found the front room of the house on fire. She roused her husband and called the fire department.

When the fire was extinguished a large broken Vess Cola bottle and wick were found just inside the picture window which had been shattered. Mr. James C. Pugh of the Kansas City, Missouri Fire Department took custody of the bottle and wick and then delivered it to Officer Willie Beck of the Kansas City, Missouri Police Department Arson Squad.

From the scene of the arson, Terry and Billings went to the defendant's house, parked the car, and left in the car of defendant Billings. They returned to the vicinity of the Bradford residence, which by now was attended by a number of police vehicles. As they pulled into a driveway nearby, the police took the defendant into custody in arrest.

At the trial, Mr. Pugh of the Fire Department was allowed to testify that the cause of the fire was the Vess Cola bottle filled with a flammable liquid and ignited by a wick thrown through the dining room window of the Bradford home.

The first point of error appellant asserts is that during the trial numerous instances of prejudicial testimony reached the jury, without objection by trial counsel or intervention of the trial court, which deprived appellant of a fair trial and which, unless corrected on this appeal under the doctrine of plain error, will result in a manifest injustice. Appellant cites seven instances of prejudice. The first three relate to testimony which characterized the instrument of incineration as a bomb and the incendiary event as a bombing. Police Officer Quinn identified the photograph of the burned house as a representation of "the house which was bombed". While this answer from a witness who was not presented as an expert on the origins of fires was subject to valid objection, there was substantial evidence later in the trial that the fire was precipitated by a bomb as to render this error harmless. The other two incidents relate to the testimony of James Pugh of the Fire Department. In response to the ques-

tion of the prosecutor as to what he found when he arrived at the Bradford premises, he responded: "Lying on the floor was the remains of a fire bomb, a broken bottle and a wick amidst the debris that was caused by the missile being thrown through the window". When he gave this testimony, however, Pugh had been qualified as an expert and this testimony, which had a substantial basis in the facts, was not subject to objection. Butcher v. Main, 426 S. W.2d 356, 359 [3, 4] (Mo.1968). Mr. Pugh was later asked by the prosecutor to identify a bottle found at the scene. He responded by reading the identifying label he had affixed to the object: "Fire bomb throwed through the window at 1716 Kensington, approximately two twenty a. m., July 9th, '71". The objection by trial counsel for appellant that the answer was a conclusion of the witness as to how the bomb "got there" was sustained by the court and the jury was instructed to disregard it. The court accorded appellant the full relief requested and no error resulted.

■■ ˙The remaining four instances of testimonial prejudice which appellant asks we correct as plain error relate to the testimony of Mr. Bradford who, with his wife, were the victims of the fire. First, appellant contends that Bradford's testimony, given without objection or admonition by the court, that the Fire Marshal had told him that but for the window shutters the Bradfords would not have been able to make it out of the house, was prejudicial hearsay and speculation. While it may be conceded that this response should have been excluded and its impression corrected upon a proper objection, from the whole record we cannot say that it had a decisive effect on the jury or that a miscarriage of justice resulted. State v. Elmore, 467 S. W.2d 915, 918 [3] (Mo.1971). Mr. Bradford was then asked to identify the bottle exhibit. He answered: "I recognize that as the Vess Cola bottle and that wick as the one that was thrown through my window the night of the fire." This response, which came after he had testified that he

was in bed asleep when the fire started, although only speculation was harmless. There was abundant competent testimony from other witnesses that the bottle had been thrown through the Bradford window.

■ The evidence established that the Bradfords had agreed to sell a residence to defendant Billings who had not honored his obligation to make payment. In probing that relationship the prosecutor asked whether any trouble had developed between them. Bradford responded that he had been informed by a neighbor of Billings that the police had raided the house and that when Bradford confronted Billings with this, Billings had insinuated that Bradford had instigated the raid through some of his relatives on the Police Department. Trial counsel for appellant objected to the testimony of insinuation as a conclusion of the witness, and the objection was sustained. The appellant contends here that the effect of this testimony was to ascribe to him criminal conduct unrelated to the crime for which he was on trial and that in the absence of objection by trial counsel on that more serious ground, it was plain error to have allowed the answer and to permit a conviction based on it to stand. If we assume that Bradford's testimony tended to prove the commission of a separate offense, it was nonetheless competent to show the defendant's motive for the fire bombing. State v. Buxton, 324 Mo. 78, 22 S.W.2d 635, 636 (1929). A trial court is allowed a wide latitude in the development of evidence of motive. State v. Hermann, 283 S.W.2d 617, 621[11] (Mo. 1955).

■ The final claim of testimonial plain error arose during the examination of Mr. Bradford by appellant's trial counsel. In an apparent attempt to establish that Billings was unavoidably prevented from making his house payments, counsel asked Bradford whether Billings was ill or otherwise indisposed during the months which followed his occupancy. Bradford

responded that the only illness of which he was aware was Billings' swollen right hand and that he was told by Billings that he was "packing a bullet" in it. Appellant contends that this episode, when viewed with counsel's conduct of the trial, demonstrates appellant was denied effective assistance and a fair trial. It is evident, however, that this cross-examination was intended to show that Billings' failure to pay for the premises was not deliberate or as a result of ill will as the State's evidence tended to show, but because of unavoidable circumstances. This cross-examination was a matter of trial strategy and the soundness of the judgment which prompted it will not be determined on hindsight. State v. Dean, 400 S.W.2d 413, 416 [8, 9] (Mo.1966).

The record does not support appellant's claim that the conviction was the result of the composite plain errors he has alleged. Although certain of the evidence was properly excludable upon objection, the finding of guilt by the jury rests upon convincing evidence properly adduced. The bombing and arson by defendant was established in detail by Glenn Terry who saw appellant throw the lighted missile through the window, by Edward Pyle, a bystander who saw defendant at the scene of the crime, and by Mrs. Bradford, who saw defendant flee the scene of the crime. Rule 27.20(c), V.A.M.R., allows relief from a conviction for plain error only if manifest injustice would otherwise result. That justification has not been shown here.

▪ Appellant invokes Rule 27.-20(c) to correct another claim of plain error. James Pugh was called by the State as an expert witness on the nature and origin of the fire. His qualifications were shown to be four and a half years' experience with the Kansas City Fire Department during which time he investigated about two dozen fires. His other training consisted of study of the fire code and instruction on fire prevention from motion pictures. Pugh qualified without objection by defendant, testified as to his investigation of the fire, and concluded that the cause of the fire was the fire bomb thrown through the window of the Bradford premises. Appellant contends that as a matter of law Pugh was not qualified to give such an opinion. The accepted rule is that the competency of an expert is a preliminary question resting in the discretion of the trial court, and, "unless the [ruling of the court] is founded on some error of law, or on serious mistake, or abuse of discretion, it is not reversible. No exact standard by which to determine the competency of such a witness exists, and much is necessarily left to the discretion of the trial court. Where there is no evidence at all tending to prove that the witness is qualified to testify as an expert, it would seem that there is a palpable abuse of discretion, and the ruling of the trial court would be subject to review." Robison v. Chicago Great Western R. Co., 66 S.W.2d 180, 185 [5–8] (Mo.App.1933); Davis v. Gatewood, 299 S.W.2d 504, 511 [7] (Mo.1957). The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact in forming an opinion on the subject matter of the inquiry, when from common experience the fact finder could not arrive at the truth unaided. Bebout v. Kurn, 348 Mo. 501, 154 S.W.2d 120, 125 [4, 5] (1941); see also, Annotation, 166 A.L.R. 1067. The testimony of witness Pugh was competent and its weight was for the jury.

▪ The final point appellant raises is that he was denied his constitutional right to a speedy trial by the inordinate delay between his arrest and preliminary hearing before the magistrate. The constitutional provision invoked, however, contemplates a pending charge by indictment or information and not merely a pending complaint, which represents a mere possibility that a criminal charge will be filed. State v. Caffey, 438 S.W.2d 167, 171 [1, 2] (Mo. 1969).

The judgment is affirmed.