STATE of Missouri, Respondent,

v.

Frederick L. BURLEY, Appellant.

No. KCD 26873.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Rehearing Denied June 2, 1975.

William E. Erdrich, Asst. Public Defender, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The appellant was convicted by a jury of second degree burglary and sentenced to imprisonment for a term of two years. On this appeal, he assigns as error (1) the refusal of the trial court to allow jury inspection of eye glasses of the prosecuting witness (2) the refusal of a proffered instruction (3) the admission of his oral statement (4) the refusal of the testimony of a defense witness, and (5) the submission of the cause to the jury.

At about 9:00 o'clock p. m. on a September evening, Newman had occasion to go to the cafe he owned to prepare for the business of the coming day. As he was about to unlock the glass front door, he heard a noise within and observed someone peering at him from behind the illuminated counter, and recognized him as the appellant, who had worked for him some time earlier. The intruder, having found himself observed in this manner, made escape through a rear window.

At the police station, from a series of photographs, Newman identified the appellant as the culprit. The witness also testified that at the time of the burglary appellant was garbed in a shirt of large brown and white checks.

The confession of the appellant to the burglary taken by the police was given in evidence.

The appellant took the stand on his own behalf and denied the offense. He gave evidence that on the evening of the event he had visited his grandmother at a hospital, left about 8:45 o'clock p. m., walked to a filling station for a bottle of pop, and thence to the home of a female acquaintance. He was then clad in blue shirt and blue jeans. There was testimony from another witness that John Burley, the brother of the appellant, who bore him a striking resemblance, was seen the very evening of the burglary attired in a shirt of large brown and white checks. The brother could not be found, however, and did not testify.

Three other witnesses for the appellant testified that after the preliminary hearing, Newman, confronted by relatives of the appellant, told them that after he had viewed the photographs a second time with the aid of his glasses, he discovered that his first identification made without glasses had been mistaken.

During cross-examination, Newman acknowledged that he habitually wore bifocals for close reading, but not at the time of his observations of the appellant. He conceded that his vision had not been tested since he acquired the glasses, fifteen years before. At this, the defense offered the spectacles into evidence. The court allowed the exhibit but refused the defense request that the glasses be circulated among the jury.

Appellant cites this refusal as error and recites for support the maxim in State v. Hundley, 46 Mo. 414, 422 (1870): "It is for the court to determine upon the legitimacy and appropriateness of the evidence, but the jury are the sole and exclusive judges of the credit and weight that is to be attached to it." The appellant understands this to mean [citing McCormick, Law of Evidence, § 179 (First Edition, 1954)] that once demonstrative evidence has been authenticated by the court, the jury as the trier of fact is entitled to inspect the object. While it is the duty of the jury, in a common law trial, to pass on the credit and weight of the evidence in the first instance [State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 51[1–4] (1936)], the refusal of the court to submit the eyeglasses to the sense inspection of the jury did not infringe that function. That witness Newman owned and used bifocals was a fact already in evidence, and although the best evidence rule did not require the production of the object [See, State v. Coleman, 441 S.W.2d 46, 51[8, 9] (Mo.1969); Underhill's Criminal Evidence, § 115], the glasses were also given in evidence. The issue of the visual acuity of witness Newman, and thus his ability to identify appellant, was not one which a jury could competently resolve from an examination of the glasses without the aid of expert testimony. State v. Hendel, 468 S.W.2d 664, 667[3] (Mo.App.1971). The refusal of the trial court to allow the request for inspection of the exhibit by the jury was within an allowable discretion. State v. Arrington, 375 S.W.2d 186, 193[13] (Mo. 1964).

The court received in evidence, over the objection of appellant, a "Waiver of Rights Form" executed by him. The appellant contends this objection raised an issue of the voluntariness of waiver, and thus entitled him to an instruction on the question. The court refused his proffered submission which undertook to instruct that the statement of appellant was not to be considered by the jury unless, in effect, he had been informed of his *Miranda* rights and had intelligently and understandably waived them. The court did submit, however, Instruction No. 9 which went to the voluntariness of the confession appellant had given police. The appellant does not object to that submission but only that the failure of the court to instruct separately on the voluntariness of waiver was prejudicial because it prompted the jury to believe that the confession which ensued was voluntary.

■ The submission on the voluntariness of the confession, Instruction No. 9, informed the jury:

[B]efore you can consider any statement you must find that it was made by the defendant and that it was freely and voluntarily made. . . . In determining whether a statement was freely and voluntarily made, the jury must consider all of the attendant circumstances at the time the statement was given.

This direction, which requires the jury to consider all attendant circumstances of the statement, comprehends and submits every element of voluntariness including that of the waiver of the rights under *Miranda*. In State v. Davis, 400 S.W.2d 141 (Mo.1966), the appellant complained that the instruction concerning the voluntariness of his confession did not submit for the consideration of the jury whether the failure to advise him of his right to an attorney or to provide him with an attorney before his statement was taken constituted elements of involuntariness. The court replied, l.c. 151[25]:

That Instruction, No. 8, told the jury to consider any such statement or statements "in the light of the circumstances under which they were made" and to determine whether or not they were voluntarily made or were "procured by coercion or threats or through fear . . ." We consider that it was wholly unnecessary, and perhaps it would have been improper, for the Court to single out and include specifically that one element, thus giving it an undue emphasis.

This rationale has been codified for prescriptive use by MAI–CR 3.44, Confession or Admission of Defendant, Notes on Use 2:

No separate or further instruction should be given on the effect of a failure to give the Miranda warnings or the effect of a waiver of defendant's rights thereunder. All of such facts, including any claimed failure to give the Miranda warnings and any claimed waiver of rights thereunder, are circumstances or factors affecting the ultimate issue of whether the statement was freely and voluntarily made and may be so argued to the jury.

We rule the point against the appellant.

■ The appellant next contends that it was error to allow testimony of his oral confession because his statement to the police interrogator that he knew nothing of the crime alleged was an exercise of his right to remain silent. The appellant relies upon the rule in Miranda v. Arizona, 384 U.S. 436 (1966), l.c. 473, 474, 86 S.Ct. 1602, l.c. 1627, 16 L.Ed.2d 694 that:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in *any* manner, at *any* time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (Emphasis added)

The denial by appellant of any knowledge of the crime, however, is not tantamount to an invocation of his right to remain silent. In United States v. Jones, 486 F.2d 599 (5th

Cir. 1973) the defendant argued that from his denials of any knowledge of a crime, the FBI should have refrained interrogation until they determined whether he intended them as assertions of his right to remain silent. The court rejected this argument, l.c. 600[1]:

> We cannot agree. Although Jones denied his complicity in the crime, he apparently indicated no unwillingness to discuss the matter of the crime. Denials of a crime by one well aware of his right to remain silent cannot, without more, be taken as an unspoken election to exercise the right to remain silent.

See, also, Brooks v. State, 229 A.2d 833 (Del.1967).

Nor is State v. Crow, 486 S.W.2d 248 (Mo.1972), also cited by appellant on this point, helpful to his contention. That defendant thrice asserted his desire to remain silent; twice by explicit oral expression, and once by tearing up the waiver of rights form he had just signed. In those circumstances, the court determined that the confession was constitutionally inadmissible. Our appellant, on the other hand, showed no unwillingness to speak freely to the police. This point is denied.

The fourth contention of error is the refusal of the trial court to allow testimony of defense witness Fleck. The appellant himself testified that on the evening of the offense, he had visited his grandmother at the Missouri Methodist Hospital, from where he left afoot at about 8:45 p. m. The prosecuting witness, Newman, testified that when he encountered appellant in the cafe, it was about 8:55 p. m. The distance between the hospital and cafe was established at slightly more than a mile. The defense offered witness Fleck, investigator and former policeman as an expert on walking time to prove that Fleck, a person of comparable physical characteristics as appellant, had walked the course between the hospital and cafe at a vigorous pace, and

that the effort required twenty-one minutes. [The inference intended from this proof was that, since the evidence of appellant was that he left the hospital on foot fifteen minutes before the commission of the offense, it was physically beyond his opportunity.] The court rejected the profert on the premise that walking speed is a matter of common knowledge and thus an inappropriate subject for expert opinion. The court thereupon took judicial notice that an average man can walk a mile in fifteen minutes.

The appellant contends that witness Fleck was in possession of facts not readily available to the jury and thus the exclusion of his testimony was error.

The admission or exclusion of expert testimony are matters largely within the discretion of the trial court. Edwards v. Rudowicz, 368 S.W.2d 503, 506[4–7] (Mo. App.1963). If a jury can intelligently resolve an issue on the basis of common and ordinary knowledge, expert opinion is not proper on that issue. Superior Ice & Coal Co. v. Belger Cartage Service, Inc., 337 S.W.2d 897, 906[8] (Mo.1960). Thus, facts which are matters of common knowledge to all intelligent men need not be proved to the jury and may be judicially noticed by the court. English v. Old American Insurance Company, 426 S.W.2d 33, 40[11–13] (Mo.1968). It is a matter of common knowledge, and thus a fact for judicial notice that average walking speed is from 2.9 to 4.4 feet per second. Miller v. St. Louis Public Service Company, 389 S.W.2d 769, 772[5] (Mo.1965). It follows, then, that judicial notice was properly taken that an average man can walk a mile in fifteen minutes. This recognition of fact, however, was only prima facie and did not foreclose rebuttal. Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 169 S.W.2d 359, 365[9–13] (1943). The proffered evidence of Fleck that he walked the course in twenty-one minutes, however, is irrelevant either to the average walking time or to the time which

may have been taken by the appellant. The offer of proof was properly rejected.

 The final point appellant asserts, that the evidence did not prove a submissible case of burglary, has been fully answered by the exposition of the other points.

The judgment is affirmed.

All concur.