STATE of Missouri, Plaintiff-Respondent,

v.

Melvin HARVELL, Defendant-Appellant.

No. 36598.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 2, 1975.

Kent W. Fanning, James C. Jones, Andrew Kotschar, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal from a judgment of conviction entered by the circuit court of the City of St. Louis whereby the defendant-appellant, Melvin Harvell, was sentenced to the department of corrections for five years for the offense of burglary in the second degree. § 560.045, RSMo 1969. For reasons hereinafter stated, we affirm.

On the evening of January 3, 1974, between 7:15 and 7:30 p. m., Mr. George Johnson, the night manager of rental property located at 4118 McPherson Avenue in the City of St. Louis, observed appellant and another man carrying a refrigerator across McPherson. Mr. Johnson and the day manager of the property were watching television when Mr. Johnson saw appellant and his companion through the window of his apartment. Johnson and the day manager left the apartment and "came outside to see where they was [sic] going with the refrigerator."

Mr. Johnson, who had known appellant for five or six years, came within twelve feet of the two men and clearly recognized appellant. When appellant saw Mr. Johnson, he dropped his end of the refrigerator and ran down an alley. Appellant was wearing dark brown pants and a sweater. Mr. Johnson saw appellant enter the rear of his house, located across the street from the rental property. Although the incident occurred at dusk, street lights were operating

and there was snow on the ground, which "made a good light." Mr. Johnson did not, however, recognize appellant's companion, because "[h]e had his back toward me."

Thereafter, Mr. Johnson called the police, and Patrolman Floyd Owens arrived. Mr. Johnson accompanied Patrolman Owens to the appellant's house. Appellant answered the door, wearing "[d]ark brown trousers and [was] bare chested from the waist up [sic]." Mr. Johnson identified appellant as one of the men carrying the refrigerator, whereupon he was arrested by Patrolman Owens.

The refrigerator had been taken by the two men from a locked, vacant apartment located at 4128 McPherson and owned by Mr. John Charles Dolsen.[1] The hinges had been removed from the door of the apartment and the door had been "pried open."

Officer George Ratermann, assigned to the Evidence Technicians Unit of the St. Louis Police Department, arrived at the scene and began an investigation for latent fingerprints. Officer Ratermann observed the refrigerator "lying on its back  . ., adjacent to one curb across the street from the building that had been burglarized." He dusted those portions of the refrigerator for fingerprints "that I felt the subject would have handled the refrigerator in moving it." Consequently, he "lifted" a palm print from the upper-right hand portion of the door of the refrigerator. The print was lifted with two-inch transparent scotch tape and was transferred to the "black hinge lifter." It was then packaged in an envelope and delivered to Officer John Salamone of the Fingerprint Identification Division.

Following appellant's arrest, Officer Joseph Boul, a latent fingerprint examiner for the St. Louis Police Department, took an inked print of appellant's palm at the holdover and delivered it to Officer Salamone.

1. Mr. Dolsen testified that he had seen the refrigerator there two or three days earlier, and when he later checked, the refrigerator was missing.

At trial and over appellant's objection, Officer Ratermann testified to the procedure followed by him in developing and removing the latent palm print from the refrigerator door. Officer Ratermann had two weeks of training in such procedure with the Identification Division of the St. Louis Police Department. He also had several weeks of on the job training "riding with another officer" and had been with the Evidence Technicians Unit for one and a half years, during which time he had investigated in excess of two thousand cases and had lifted at least one thousand prints. Officer Ratermann admitted that he was not an expert at identifying fingerprints.

Officer John Salamone, a latent fingerprint identification officer for the St. Louis Police Department, testified that the palm print taken by Officer Ratermann was of "very good quality" and that it had in excess of twenty identifying characteristics which matched the characteristics of the inked print taken by Officer Boul. He further testified that a minimum of eight identifying characteristics must match before it may be said that two given prints are identical. Officer Salamone was a graduate of both the St. Louis Police Academy and the Institute of Applied Science in Chicago and attended the F.B.I. school. No objection was made to his testimony or to the introduction in evidence of the latent palm print exhibit.

At the close of the state's case, the court found that the appellant had a prior felony conviction. Appellant presented no evidence in his behalf. The jury returned a verdict of guilty of the offense of second degree burglary, and the court, under the provisions of the Second Offender Act, § 556.280, RSMo 1969, sentenced appellant to five years imprisonment.

Appellant's sole contention on this appeal is that the trial court erred in failing to sustain appellant's objection to the testimony of Officer Ratermann because the prosecution failed to qualify him "as an expert in fingerprint removal and retention."

We find this point to be without merit. The well established rule is that the qualification of an expert witness in a criminal case is a matter resting primarily in the sound discretion of the trial court and is not reversible on appeal absent a clear showing of abuse of that discretion. *State v. Jones*, 518 S.W.2d 304, 311 (Mo.App.1975); *State v. Williams*, 515 S.W.2d 463, 466 (Mo.1974); *State v. Burley*, 523 S.W.2d 575, 579 (Mo. App.1975). We find no such abuse of discretion here. Since no exact standard by which to determine the qualifications of an expert witness exists, much is necessarily left to the discretion of the trial court. *Billings v. State*, 503 S.W.2d 57, 61 (Mo. App.1973). The testimony of Officer Ratermann was limited to an explanation of the procedure utilized in the development and removal of appellant's latent palm print from the surface of the refrigerator door. The state did not attempt to elicit an opinion from Officer Ratermann regarding identification or comparison of the latent print. Rather, Officer Ratermann's testimony established the procedure of fingerprint removal and the transfer of custody of the palm print exhibit to Officer Salamone. See 5 Am.Jur., Proof of Facts, Fingerprints at 77 (1960).

The state showed that Officer Ratermann had attended a two-week formal training course in the procedure of fingerprint removal followed by several weeks of "on the job" training. Moreover, he had worked in the Evidence Technicians Unit for more than a year, during which time he had "lifted" at least a thousand fingerprints.[2]

---

2. We perceive no justification for appellant's statement in his brief that "[Officer Ratermann's] testimony indicated that he performed his functions in a very peremptory and half-hearted manner." On the contrary, Officer Ratermann's testimony revealed that he was very knowledgeable and competent in his work and carefully followed established procedure on the occasion in question. Officer Salamone's testimony was supportive of this conclusion.

It is argued by appellant that, notwithstanding his practical experience, the extent of Officer Ratermann's formal education in the field of latent fingerprint "removal and retention" was insufficient to qualify him as an expert. There is no requirement that an expert be a technical scientist or a college graduate.[3] *State v. Foster*, 355 Mo. 577, 197 S.W.2d 313, 325 (1946). The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact in forming an opinion on the subject matter of the inquiry. *Billings v. State*, supra, 503 S.W.2d at 61. We hold that Officer Ratermann's training and experience in the field of latent fingerprint development was sufficient to enable him to testify on the particular procedure followed with respect to the retrieval of appellant's latent palm print. His testimony was confined to the scope of the procedure followed and was necessary as a prerequisite to the comparison testimony of Officer Salamone. See *State v. Johnson*, 351 Mo. 785, 174 S.W.2d 139, 141 (1943); *State v. Richetti*, 342 Mo. 1015, 119 S.W.2d 330, 341 (1938).

We find no merit in appellant's point, and we conclude that the trial court did not err or abuse its discretion (1) in admitting the testimony of Officer Ratermann regarding the procedure followed in obtaining the latent print, and (2) in permitting Officer Ratermann to testify "as an expert in fingerprint removal and retention."

We have read the record, the briefs and authorities relied upon by the appellant and find no prejudicial error.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.

**3.** See Moennssens, Moses and Inbau, Scientific Evidence in Criminal Cases, 337, 338 (1973), wherein it is stated: "The overwhelming majority of fingerprint experts have acquired their knowledge and experience 'on the job.' There are no courses of formal study at universities or colleges leading to a degree in fingerprint identification or for preparing one to become a fingerprint expert. But there is a voluminous literature on the subject. There are also various training courses organized by law enforcement agencies . . . . None of these courses purport to prepare its students for the job of being a fingerprint expert, they aim only to teach the rudimentary skill which will permit one to work in an identification bureau. . . . Experience is a necessary adjunct."