**STATE of Missouri, Respondent,**

v.

**Jerry C. MYERS, Appellant.**

**No. 40620.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 9, 1979.

Adam B. Fischer, Durley, Keating & Fischer, Sedalia, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., James F. McHenry, Pros. Atty., Jefferson City, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from his conviction by a jury of murder second degree. The jury assessed punishment at twenty-five years imprisonment and the court entered judgment accordingly.

During the late evening hours of February 24, 1977, a shooting incident at the Wildwood Apartments in Cole County resulted in the death of Marsha Sue Myers. The Jefferson City Police office was informed of the occurrence and dispatched the Sheriff of Cole County and other law enforcement personnel to the site. Upon their arrival, they took Jerry Myers, the victim's husband into custody. Myers was subsequently charged with murdering his wife.

The police investigation revealed that the homicide occurred in the bedroom of the couple's apartment. The defendant had returned home from a tavern where he had been playing cards with friends. He and his wife had apparently quarreled about his consumption of alcoholic beverages. The decedent had then proceeded to bed and was in bed when struck by the fatal shot which was a projectile fired from a 30–30 caliber rifle. The defendant testified that he did not intend to kill his wife. He stated that the gun fired accidentally as he was backing out of the bedroom, and that he was standing on the left side of the bed at the time the gun discharged.

At the trial, Mark Schreiber, a special investigator for the Cole County Prosecuting Attorney's office, related a substantial part of the results of the investigation concerning the incident. He indicated that the victim had sustained massive injuries to her skull. He described the entry wound as being located in the upper left hand side of

the head, and the exit wound as being located in the upper right hand side of the head. A search for the projectile which caused the mortal wound disclosed that after exiting the decedent's skull, it traveled through the two pillows upon which she had been lying, struck the wall and then bounced back onto the bed. The bullet was found with wadding from the pillows clinging to it and the base of the bullet pointing towards the victim's head. When questioned by the Prosecuting Attorney whether any relationship, linear or otherwise existed between the ingress and egress wound and the holes in the pillows leading to where the bullet was found Schreiber stated: "all of the holes that went through the skull of the victim and through the pillows appeared to be in a straight line. In other words they lined up." The Prosecuting Attorney then asked: "if you followed that line out from the projectile through the straight line created by the other points of puncture, into what area of the room would it have taken you?" Schreiber responded that tracing the line backwards would lead to a point on the right side of the bedroom.

The apparent purpose of this testimony was to discredit the defendant's testimony as to his location in the room at the time the shot was fired. The defendant admits that he fired the gun and that the bullet hit his wife.

On appeal, defendant alleges that the trial court erred when it permitted Schreiber to testify as to the path of the bullet through the decedent's skull and pillows. He further claims that the court erred in permitting Schreiber to state his opinion as to the line of fire of the bullet which killed the victim. He claims that "no proper foundation had been laid [sic] upon which said witness could base expert opinion in regard to the line of fire, because the evidence failed to show that said witness possessed expert qualifications." The defendant does not contend that this testimony was not a proper subject for expert testimony; he claims only that Schreiber was not properly qualified as an expert on this subject.

The rules governing the competency of persons to testify as an expert are well-established. A witness is capable of testifying as an expert although his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research. *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977). "The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact in forming an opinion on the subject matter of the inquiry." *State v. Harvell*, 527 S.W.2d 445, 448 (Mo.App.1975).

We conclude that the court did not err in permitting this testimony.[1] Schreiber had been a deputy sheriff for approximately four years and then a special investigator for approximately four years. He stated that he had investigated deaths caused by gunshot wounds on "numerous occasions." We believe this experience properly qualified him as an expert to state his opinion on this subject. See e. g. *Brown v. State*, 140 Ga. 160, 230 S.E.2d 128, 131 (Ct.App.1976). Finally, we note that "the

---

1. Frankly, much of Schreiber's testimony falls within the category of giving facts and appearances rather than opinions. The court had sustained defendant's objection to the admission of photos of the victim's body while lying on the bed. *State v. Wisdom*, 84 Mo. 177 (1884) is a Supreme Court of Missouri Case wherein the court was confronted with testimony somewhat similar to Schreiber's. The court stated at 186–87:

   One Williams, not an expert, who testified for the state, having said he saw a wound in the right side of Judy's head a little behind the right ear, was asked: "From what you saw of the ball as it went in, how did it

   appear to range?" He replied: "It appeared to range toward the left eye." Defendant objected to this question and answer as incompetent, and because the witness was not an expert and could not testify as one. Further along in his testimony this witness said: "I saw blood on the side of his face; I saw the hole where the ball went in. His left eye was black and apparently shoved out." This witness was not testifying as an expert, but describing what he had seen, giving facts and appearances rather than opinions. There is no doubt under the evidence that the shot killed Judy, and this testimony of Williams, even if incompetent, was not material.

749

qualification of an expert witness in a criminal case is a matter resting primarily in the sound discretion of the trial court and is not reversible on appeal absent a clear showing of abuse of that discretion." *State v. Harvell*, 527 S.W.2d at 447. We find no abuse of discretion here. The jury could consider Schreiber's qualifications in deciding how much weight to give his testimony. *State v. Windmiller*, 579 S.W.2d 730, 734 (Mo.App. 1979). Defendant's point is without merit.

Judgment affirmed.

GUNN and CRIST, JJ., concur.