**STATE of Missouri, Respondent,**

v.

**Nancy MARKS, Appellant.**

**No. WD 37517.**

Missouri Court of Appeals, Western District.

Oct. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1986.

Application to Transfer Denied Jan. 13, 1987.

David W. Russell, Charles E. Atwell, Elena M. Franco, Kansas City, for appellant.

William L. Webster, Atty. Gen., Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Pursuant to § 570.030, RSMo 1978, the appellant Nancy Marks was convicted by a jury in the Circuit Court of Jackson County for stealing by means of deceit property over the value of $150. She was sentenced to imprisonment for a period of seven years and fined $5,000. Asserting three points of error in the trial court, Marks now appeals from her conviction.

The judgment of conviction is affirmed.

The following facts were adduced at trial. David and Kathie Warren were married in 1980 and settled on a farm outside of Jamesport, Missouri. Toward the end of that year they began experiencing marital difficulties. In January 1981, the Warrens saw a newspaper advertisement in which "Sister Nancy" offered assistance in overcoming such marital problems. Upon calling a telephone number which appeared in the advertisement, they reached the appellant Nancy Marks.

Over the next three and a half years, the Warrens remained in close contact with appellant. They frequently visited her house in Kansas City, Missouri, which also served as appellant's place of business. A palm reader's sign was displayed in front of the house, and during their initial visit to Sister Nancy's establishment, the Warrens had their palms read. Appellant thereupon informed the couple that David Warren had some darkness or evil over him which had to be eradicated in order to solve the Warrens' marital difficulties.

Appellant offered to rid David Warren of this evil for a fee of $450. She instructed the Warrens to rub an egg over their bodies, put it underneath their bed for a night, and bring the egg back to appellant along with the money. The Warrens complied with these instructions and went to see appellant a second time. Incantations were recited and the egg was cracked open, revealing a red, mucous-like substance inside. Appellant told the Warrens that this red substance represented the evil she had told them about. She also said that for an additional $2,000 she could rid them of the evil.

Appellant instructed the Warrens to follow the same procedures with a tomato as they had earlier with the egg. The Warrens followed these instructions and returned to appellant's house. Incantations were again recited and the tomato was split open, revealing a foreign object which appellant identified as the claw of the devil. The Warrens then paid $5,000 for an invisible "seal or dome" which appellant said would protect the couple against the evil over them.

In the spring of 1981, Kathie Warren became pregnant. She began experiencing severe stomach cramps. When advised of these developments, appellant told the Warrens that their baby would be born blind and that Kathie would die during childbirth. They were instructed to bring appellant $25,000 in order to prevent these things from happening.

The Warrens continued to consult appellant in order to stave off the evil over them, sometimes repeating the egg or tomato procedures. Appellant usually said that she would take the money to her church, where she would "work" on it and talk with spirits. On occasion, appellant purported to burn the money which David and Kathie Warren brought to her. She assured the couple that they would get all of their money back after the evil had been removed.

Over the three and half year period during which they consulted with Nancy Marks, the Warrens spoke to her hundreds of times, sometimes calling her as frequently as every other day. They visited her house on approximately 60 occasions. The Warrens estimated that they gave appellant a total sum of about $150,000. They sold livestock, farm machinery, and eventually their farm. They also borrowed some of the money they gave to appellant. In 1984, the Warrens became suspicious that appellant's activities were not legitimate and contacted the police. This prosecution followed.

I

Appellant contends that the verdict-directing instruction was fatally defective in that the misrepresentations charged were submitted to the jury disjunctively, whereas the information had alleged the misrepresentations in the conjunctive. The instruction in question directed the jury to find the offense of stealing by deceit if they determined beyond a reasonable doubt that the defendant had appropriated $150 or more from David Warren by means of

falsely promising to prevent Kathie Warren from dying during childbirth *or* falsely promising to cure Kathie Warren of stomach cramps *or* falsely promising to remove evil curses from the lives of David and Kathie Warren.

The verdict in a jury trial of a criminal case in Missouri must be unanimous. Supreme Court Rule 29.01(a). The thrust of appellant's first point on appeal is that the disjunctive wording of the verdict director allowed the jury to convict without necessarily being in unanimous agreement regarding which misrepresentation(s) formed the basis of the offense. Thus, the accusation (which charged the misrepresentations in the conjunctive) was constructively amended and broadened by the disjunctive submission. This aspect of the argument is treated in Section II of the opinion. Simply put, the jurors were not required to agree upon any particular promise among the three which appellant is charged with having made.

The point is disallowed for reasons we will now explain.

The argument in the present case is more theoretical than real. There are cases where submissions in the disjunctive have been held bad in that they allowed for a non-unanimous verdict. Those cases, however, are those where the gravamen of the offense has been submitted alternatively. For example, in *State v. Oswald*, 306 S.W.2d 559 (Mo.1957), the trial court charged the jury that conviction was authorized if the defendant had inserted his genital organ into "the mouth and rectum" of the victim or "committed either of such aforesaid acts". This instruction was held bad in that it allowed a non-unanimous verdict. But the disjunctive submission was as to the very act which was the gravamen of the offense. And it is true that the jury must agree on "just what the defendant did", *United States v. Gipson*, 553 F.2d 453, 457 (5th Cir.1977).

Similarly in *State v. Washington*, 242 Mo. 401, 146 S.W. 1164 (Mo.1912) and the companion case of *State v. Jackson*, 242 Mo. 410, 146 S.W. 1166 (Mo.1912), the verdicts were held bad for non-unanimity where the juries were directed to find the respective defendants guilty (of keeping a gaming table) if they had unlawfully maintained either a crap table or a poker table.

■ Our case, however, falls within another class of cases, in which the *method* is submitted disjunctively. In those cases, disjunctive submissions are permissible. Here the gravamen of the offense was the fraudulent appropriation of money, while the misrepresentations or tricks were the means thereof. In *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979), the instruction directed a verdict of guilty if defendant directly committed the crime charged, aided or abetted in its commission, or conspired with another to commit the crime. This instruction was held not to violate the unanimity principle. Said the court, at 280 N.W.2d 292–293:

Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed. The cases across the country—New York, Michigan, Washington—recognize and note that it is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged. To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant.

Our own case of *State v. Esker*, 658 S.W.2d 49, 53 (Mo.App.1983) holds the same.

We note that there was evidence to support each of the three statements hypothesized.

## II

The indictment, as before noted, charged in the conjunctive that defendant had made four different false and fraudulent representations to the victim David Warren. The verdict director directed conviction if defendant made any one of three of the charged representations.

Appellant says the disjunctive submission of the hypothetical false statements which had been charged conjunctively in the indictment constituted a constructive amendment of the indictment.

Ultimately, this argument is based upon the same theory as the argument that the disjunctive submission allows a non-unanimous verdict, a point which we have treated in Section I hereof. Defendant acknowledges a line of Missouri cases which hold that the verdict director may hypothesize, in the disjunctive, various ways or means of committing an offense, which have been charged in the conjunctive. *State v. Johnstone*, 335 S.W.2d 199, 203 (Mo.1960); *Ryan v. State*, 634 S.W.2d 529, 532 (Mo. App.1982); *State v. Hulett*, 595 S.W.2d 767, 769 (Mo.App.1980); *State v. Hartman*, 364 Mo. 1109, 273 S.W.2d 198, 203 (banc 1954); *State v. Church*, 636 S.W.2d 703, 704 (Mo.App.1982). She attempts to distinguish these cases from her own, but we think they are not distinguishable on principle. She cites no case for her position which comes near to being analogous to the present case.

■ We hold that the disjunctive submission was not a constructive amendment of the indictment. The verdict director did not hypothesize a new and distinct offense from the one charged. *State v. Jelks*, 672 S.W.2d 722, 724 (Mo.App.1984); *State v. Coleman*, 660 S.W.2d 201, 218 (Mo.App. 1983); *State v. Singleton*, 602 S.W.2d 3, 8 (Mo.App.1980).

## III

Appellant's next point on appeal is that the trial court erred in admitting the expert testimony and demonstrations of David Parker, a detective with the Kansas City, Missouri Police Department. Appellant urges that gypsy artifices were not a proper subject of expert testimony, that Detective Parker was not qualified as an expert with regard to such artifices, and that Parker's demonstrations were irrelevant in that they were not substantially similar to the occurrences in question.

The second point is denied.

In substance, Detective Parker testified that he had been a police officer for fourteen years and had been assigned to the fraud division for six years. During that time he had investigated well over 100 fraud cases and acquired special training in confidence games generally. He had also attended a seminar and studied training tapes on the subject of gypsy confidence games. Parker explained how the illusion of burning money could be performed. He then explained and demonstrated the illusions of making a foreign object appear in a tomato and making a blood-like substance appear in an egg.

■ Appellant argues that these ruses were not proper subjects of expert testimony. It is well settled that the admissibility of expert testimony in a given situation is left to the sound discretion of the trial court and will not be disturbed on appeal in the absence of a clear abuse of discretion. *Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202, 213 (Mo.App.1985); *Keller v. International Harvester Corp.*, 648 S.W.2d 584, 591–92 (Mo.App.1983). The trial court's discretion in this regard is only abused when the ruling is "clearly against the logic of the circumstances or when it is arbitrary and unreasonable." *Mathews v. Chrysler Realty Corp.*, 627 S.W.2d 314, 319 (Mo.App.1982).

■ The essential test of the admissibility of expert testimony is whether such testimony will be helpful to the jury. *Randolph v. USF & G Co.'s*, 626 S.W.2d 418, 421 (Mo.App.1981). A guiding principle in applying this test is that expert testimony is proper "[i]f the subject is one with which lay jurors are not likely to be conversant.... On the other hand, if the subject

is one of everyday experience, ... then opinion testimony is properly rejected." *Wessar v. John Chezik Motors, Inc.*, 623 S.W.2d 599, 602 (Mo.App.1981).

■ Applying these principles to the case at hand, we find that the gypsy artifices in question were clearly proper subjects of expert testimony. Expert testimony is frequently admitted in this and other jurisdictions in order to explain the modus operandi of criminal activity. In *State v. Saussele*, 265 S.W.2d 290 (Mo. banc 1954), no error was found in permitting police officers to testify as expert witnesses regarding the methods and terminology of betting on horse races. *United States v. Sellaro*, 514 F.2d 114 (8th Cir.1973), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975), involved use of an interstate facility, the telephone, to violate Missouri laws prohibiting bookmaking and gambling. The method of operation of bookmakers was held to be a proper subject for expert testimony. *See also United States v. Jackson*, 425 F.2d 574 (D.C.Cir. 1970) (modus operandi of pickpockets proper subject of expert testimony); *State v. Johnson*, 237 N.W.2d 819 (Iowa 1976) (techniques of "till-tapping" proper subject of expert testimony); *Commonwealth v. Townsend*, 149 Pa.Super. 337, 27 A.2d 462 (1942) (confidence game known as "drop-pigeon" proper subject of expert testimony).

■ Appellant argues that the gypsy techniques explained and demonstrated by Detective Parker were matters within common knowledge of the jurors. We think not. Appellant directs the court's attention to *State v. Burley*, 523 S.W.2d 575 (Mo. App.1975). The court in *Burley*, took judicial notice, in lieu of expert testimony, that an average person can walk a mile in about 15 minutes. The subject of walking is clearly distinguishable from the gypsy artifices in question here.

### IIIa

■ Appellant also argues that Detective Parker was not qualified to testify as an expert regarding the egg, tomato, and money burning illusions. Whether a witness is qualified to testify as an expert rests in the sound discretion of the trial court. *Keller v. International Harvester Corp.*, 648 S.W.2d 584, 591–92 (Mo.App. 1983); *Randolph v. USF & G Co.'s*, 626 S.W.2d 418, 421 (Mo.App.1981). "The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact in forming an opinion on the subject matter of the inquiry." *State v. Harvell*, 527 S.W.2d 445, 448 (Mo.App.1975).

■ Detective Parker's testimony regarding his expertise in the area of gypsy fraud is summarized above. The thrust of appellant's argument is that Parker's formal training in this area, attendance of one seminar and study of training tapes on the subject of gypsy fraud, was insufficient. It is, however, well established that a witness may be competent to testify as an expert though his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research. *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977); *State v. Myers*, 588 S.W.2d 747, 748 (Mo.App. 1979). Expert testimony regarding the modus operandi of criminal activity has generally come from law enforcement officers based upon their practical experience. *See e.g., United States v. Jackson*, 425 F.2d 574 (D.C.Cir.1970) (detective with metropolitan police force for seven years, assigned to pickpocket division for three of those years); *People v. Crooks*, 250 Cal.App.2d 788, 59 Cal.Rptr. 39 (1967) (police officer on vice squad for 10 years). *See generally* 31 Am.Jur.2d, *Expert & Opinion Evidence* § 180 (1967). There was no abuse of discretion in allowing Detective Parker to testify as an expert.

### IIIb

At trial, Detective Parker demonstrated how to create the appearance of a foreign object inside of a tomato when it is split open and how to create the appearance of a blood-like substance inside of an egg when it is cracked open. Appellant attacks these

demonstrations as being irrelevant in that they were not substantially similar to the actual occurrences in question. Both David and Kathie Warren testified that on two occasions Nancy Marks had instructed them to rub a tomato over their bodies; Marks then split open a tomato, revealing what she represented to be a devil's claw or devil's head inside. The Warrens also testified that on several occasions they were instructed to rub an egg over their bodies. Marks would then break open an egg revealing a red, mucous-like substance inside which was represented to be a sign of evil.

■■■■ Reenactment of material events at trial has frequently been held admissible in order to illustrate testimony. *See generally* E. Cleary, McCormick on Evidence § 215, at 617 (3d ed. 1984) and cases cited therein. The admissibility of incourt demonstrations or experiments is also a matter which lies within the sound discretion of the trial court. *Fowler v. S–H–S Motor Sales Corp.*, 560 S.W.2d 350, 356 (Mo.App. 1977); *Geisel v. Haintl*, 427 S.W.2d 525, 529 (Mo.1968). The demonstrations performed by Detective Parker were clearly relevant to explain the testimony of David and Kathie Warren, and appellant's bare assertion that such demonstrations were not substantially similar to the events in question will not support a finding that the trial court abused its discretion.

### IV

■■■ Defendant says the indictment was duplicitous in that it charged multiple offenses in a single count. *See generally State v. Shell*, 571 S.W.2d 798 (Mo.App. 1978); *United States v. Murray*, 618 F.2d 892 (2d Cir.1980). This indictment was not duplicitous, however. The charge described a continuing scheme to bilk the Warrens out of sums of money by means of various tricks which were related to each other. Several separate crimes might have been charged, no doubt, but the State could charge the offense, as it did, as a single offense. *State v. Mandell*, 353 Mo. 502, 183 S.W.2d 59, 61 (1944); *United*

*States v. Pavloski*, 574 F.2d 933, 936 (7th Cir.1978).

Affirmed.

TURNAGE, J., concurs.

CLARK, C.J., concurs in result and files separate opinion.

CLARK, Chief Judge, concurring.

I concur in affirmance of the conviction in this case but write to express my view that the discussion under sub-heading I in the principal opinion is unnecessary and inappropriate because it addresses a subject not raised in the appellant's point of error.

The point set out in appellant's brief, which is the subject of discussion in sub-headings I and II of the principal opinion, reads as follows:

> "The trial court erred in submitting Instruction No. 5, the verdict directing instruction, because the indictment and amended information charged defendant with offenses conjunctively while Instruction No. 5 charged in the disjunctive thus the court's instruction constructively amended the charge."

Appellant was tried on an amended information charging felony stealing, § 570.030, RSMo.1978. The means by which the stealing was accomplished consisted of false representations that by use of occult powers, appellant would ward off misfortune and illness faced by the victim. The information set out in the conjunctive four false representations on which the victim was alleged to have relied as a basis for payment of money to appellant. At trial, evidence of the four misrepresentations was presented but the verdict directing instruction informed the jury a guilty verdict could be returned upon finding that any one of the misrepresentations was made.

This factual and procedural history, taken with the statement of the point on appeal, demonstrate that the only issue for decision is whether the variance between the information and the instruction result in the statement of two different offenses

or, as appellant's brief frames the question, whether the deviation constructively amended the information. The principal opinion deals with this issue in sub-heading II of the opinion, albeit tersely, and reaches the correct result.

The issue of whether appellant's constitutional entitlement to a unanimous jury verdict for conviction in a criminal case under Art. I, § 22(a) of the Constitution of Missouri and the Sixth Amendment to the United States Constitution was breached by the disjunctive submission of the case is not raised or briefed by appellant or respondent and the discussion of the question in sub-heading I of the principal opinion is therefore unnecessary to disposition of the appeal. Were that question before this court, the writer would entertain doubt as to whether the conviction could be affirmed. *People v. Failla,* 64 Cal.2d 560, 51 Cal.Rptr. 103, 414 P.2d 39, 44 (banc 1966); *People v. Heideman,* 58 Cal.App.3d 321, 130 Cal.Rptr. 349, 355 (1976); *Johnson v. United States,* 398 A.2d 354, 369 (D.C.App. 1979).