STATE of Missouri, Respondent,

v.

Steven E. WALKER, Appellant.

No. WD33898.

Missouri Court of Appeals,
Western District.

May 3, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 28, 1983.

Gary W. Fleming, P.C., Sedalia, for appellant.

John Ashcroft, Atty. Gen., George W. Cox, III, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

WASSERSTROM, Presiding Judge.

Defendant appeals from his conviction by jury of manslaughter. His brief on appeal seriously offends Rule 84.04(c) and (d). Nevertheless, we review this appeal as a matter of grace, find no reversible error and therefore affirm.

The jury could reasonably find from the evidence the following facts beyond a reasonable doubt. On the evening of May 22, 1981, defendant and his wife Wanda did a considerable amount of drinking, and during the evening quarrels occurred between them. They returned very late to the mobile trailer park in which they lived, and when they entered their trailer the quarrels continued and intensified.

About 2:30 a.m. on May 23, 1981, the manager of the trailer park, Earl Howe, heard a shot. Soon thereafter defendant appeared at the Howe trailer and stated: "Call the police. I think my wife shot herself." Howe immediately went with defendant back to defendant's trailer, where Howe entered the tiny bedroom.

At that time Wanda was lying on her back stretched out on the bed completely nude. She was making sounds which appeared to Howe to be snores, and he could see nothing wrong with her. There were two guns on the bed along side of her, one a .25 caliber pistol and the other a .22 caliber pistol. Howe testified that the .22 caliber gun was on Wanda's left and that the .25 caliber gun was to her right. Defendant scooped up both guns and handed them to Howe with the statement that they should be taken away because Wanda "will probably mess around and shoot herself."

On leaving the bedroom, Howe removed the cartridges and found that two rounds of the .22 caliber gun had been fired. He returned to his own trailer, taking the two guns with him.

Soon thereafter defendant appeared at the Howe trailer a second time. He stated that Wanda was bleeding and he needed to call the police and an ambulance. Howe went into defendant's trailer, and this time he saw blood coming from Wanda's left ear.

The police responded to defendant's call and conducted an immediate investigation at the site. They found one bullet hole in a mirror above the bed on which Wanda had been lying and a second bullet hole in the right temple of Wanda's head. Testimony adduced by the state at trial showed that Wanda was left-handed. Wanda was trans-

ported by ambulance from the trailer to a hospital, where she died as a result of the bullet wound.

Defendant's contention in the trial court was that Wanda's death resulted from suicide. Gunshot residue testing of her hands, however, gave results inconsistent with her having fired any gun.

## I.

At the commencement of the voir dire, the trial court commented briefly to the jury on the difference between a civil case and a criminal case and pointed out that they were about to hear a criminal case. The judge also made brief remarks concerning disqualification by reason of prior knowledge of the events or prior acquaintanceship with the parties. Defendant complains that these remarks constituted improper oral instructions to the jury.

*State v. Cross,* 594 S.W.2d 609 (Mo. banc 1980), holds that it is improper for a trial court to make oral embellishments on the standard preliminary instructions. The present case, however, is readily distinguishable from *Cross.* The comments here were very brief and innocuous, occurred as part of the voir dire and before impaneling of the jury, and no objection was voiced at that time by defense counsel. Under the circumstances presented, no possible prejudice could have occurred to defendant. His first point is denied. *State v. Harvey,* 625 S.W.2d 198 (Mo.App.1981); *State v. Babbitt,* 639 S.W.2d 196 (Mo.App.1982).

## II.

Defendant objects next to the failure to exclude certain handwritten notations on the back of three photographs. Those photographs were offered through Sgt. Mosier who was one of the policemen who investigated the crime. The handwritten notations on the back of the exhibits were written by a different policeman who did not testify.

Defendant argues that the notations were hearsay and should have been excluded on that ground. Mosier, however, identified the photographs as being true representations of what he had seen and described what the photographs purported to show. The notations on the back of the photographs were merely cumulative to his testimony, and the hearsay character of those notations present no ground for reversal. *State v. Nimrod,* 484 S.W.2d 475 (Mo.1972); *State v. Merritt,* 542 S.W.2d 14 (Mo.App.1976); *State v. Montgomery,* 571 S.W.2d 784 (Mo.App.1978).

## III.

Defendant complains next about the introduction of expert testimony to show the results of gunshot residue tests. His argument breaks down into two subpoints.

A. As his first subpoint, defendant argues that Gene Gietzen, who testified as to the test results, was not a qualified expert. This witness was the acting director of the Springfield Regional Crime Laboratory, where he had been employed for a little over two years. He had received about a week of training with the Crime Laboratory Director in Cape Girardeau, Missouri, learning the anodic stripping voltammetry testing process. Thereafter he had performed approximately 100 gunshot residue tests himself in the Springfield laboratory.

Although Gietzen's training in an academic sense was quite meager, a witness may become qualified through knowledge gained by practical experience rather than by scientific study or research. *State v. Rhone,* 555 S.W.2d 839 (Mo. banc 1977); *State v. Neal,* 624 S.W.2d 182 (Mo.App. 1981); *State v. Myers,* 588 S.W.2d 747 (Mo. App.1979). Whether or not a witness offered as an expert is properly qualified to so testify rests largely in the sound discretion of the trial court. There was no abuse of that discretion here.

B. For his second subpoint, defendant argues that the anodic stripping voltammetry process has not been scientifically proved valid. It should be noted that this particular argument was never made in the trial court.

In any event, the argument is without substance. Gietzen testified in his direct testimony that the anodic stripping method is accepted in the general scientific community. He further identified scientific studies in connection with anodic stripping method of testing gunshot residue. No objection was made to any of this by defendant at trial, and he made no attempt whatsoever to disprove this method of testing. Under these circumstances, defendant's present contention must be rejected. *State v. Pernell,* 606 S.W.2d 389 (Mo.App.1979).

### IV.

Defendant next complains of the testimony by Linda Knox to the effect that Wanda had told her that she had been beaten by defendant. Objection to that testimony was sustained and the jury was instructed to disregard that statement. Defendant argues that that relief was insufficient and that the judge should have declared a mistrial.

A mistrial is required only where the trial occurrence has resulted in irremediable prejudice. *State v. Sanders,* 621 S.W.2d 386 (Mo.App.1981). Whether such has occurred so as to require the granting of a mistrial rests largely in the discretion of the trial court. *State v. Purnell,* 621 S.W.2d 277 (Mo.1981). No abuse of discretion appears under the facts of this case, and defendant's fourth point is therefore denied.

### V.

Defendant next complains that the prosecutor in closing argument asked the jury to punish defendant for crime in the community rather than for what the facts showed he did. The prosecutor's argument in question merely pointed out to the jury the importance of criminal law enforcement, which is a proper subject for prosecutorial argument. *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982). Defendant's fifth point is therefore denied.

### VI and VII.

Defendant's sixth and seventh points can be considered together. Point VI is that the case against defendant was based on circumstantial evidence and was insufficient for conviction; and Point VII merely states that the court erred in failing to grant defendant's motions for acquittal. In support of this position, defendant relies upon the rule that in a case of circumstantial evidence the state's proof must show facts inconsistent with any hypothesis of defendant's innocence. This rule, however, is realistically tempered in its application in that the circumstances need not be absolutely conclusive of guilt and they need not demonstrate impossibility of innocence. *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1977).

The facts as outlined earlier in this opinion suffice under the rule as stated in *Franco.* The following factors support the verdict: (1) From the time the Walkers returned to their trailer until Wanda was found fatally wounded, according to defendant's own admission, he and Wanda were the only persons present except for the visit by Howe. (2) Accordingly, either defendant or Wanda must have fired the fatal shot. Yet the gunshot residue test indicated that Wanda had not fired a gun. That left only defendant as the one responsible. (3) Wanda was left-handed, and the natural place for a self-inflicted wound to the head would have been on the left side. Yet the wound was to the right side of her head. On the other hand, the gun from which the fatal shot was fired was lying on the bed to her left. It should be mentioned that defendant denied that position of the gun and testified that the .22 caliber gun was lying to Wanda's right; but the jury was privileged to disbelieve that testimony and accept instead Howe's testimony as to the position of the gun. Anyway, it would take an unnatural contortion to use the left hand to shoot a bullet into the right temple. Defendant's points VI and VII are denied.

### VIII.

In his eighth point, defendant complains of Instruction No. 6. Paragraph Third of

that instruction directed the jury to determine whether defendant's action was suddenly provoked "by the unexpected acts *of* conduct of Wanda Lee Walker." (emphasis added). Defendant argues that the word "of" should have been "or."

■ That mistake was obviously no more than a typographical error. The jury could not have been misled thereby. Such a minor mistake cannot be ground for reversal. *State v. Crump,* 596 S.W.2d 76 (Mo. App.1980). Defendant's eighth point is therefore denied.

Affirmed.

All concur.