STATE of Missouri, Respondent,

v.

Donald STEWART, Appellant.

No. 36874.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 13, 1976.

Motion for Rehearing or for Hearing by Court En Banc Denied May 17, 1976.

Application to Transfer Denied
July 12, 1976.

John C. Danforth, Atty. Gen., Preston Dean, Sheila K. Hyatt, Asst. Attys. Gen., Jefferson City, for respondent.

Robert E. Ahrens, St. Louis, for appellant.

CLEMENS, Presiding Judge.

This case stems from a planned payroll robbery that didn't quite happen. A jury found defendant guilty of attempted first-degree robbery and carrying a concealed weapon. Pursuant to the verdicts the court sentenced defendant to eight years' imprisonment on the attempted robbery charge and two years' imprisonment on the concealed weapons charge, to run consecutively. Defendant appeals.

We first take up defendant's contention that despite evidence of prolonged planning and *preparation* to rob, there was no *overt act* sufficient to constitute an *attempt* to rob. The gist of the State's case was that defendant and three accomplices planned to rob a courier as he left a bank with payroll money, armed themselves, took their assigned positions outside the bank and as the courier left the bank the police intervened and arrested the four men.

Two basic principles apply. The first is unchallenged: Where two or more persons knowingly act together unlawfully, the act of each is the act of all in the eyes of the law. Second, the four requisite elements of an attempt to commit a crime are an intent to commit it, an overt act toward its commission, failure of consummation and the apparent possibility of commission. The challenged element here is the "overt act." *State v. Thomas,* infra, that is, did

the acts go beyond mere preparation and became perpetration? We take a closer look at the evidence.

The State's principal testimony came from Raymond Jones, whom defendant had recruited as one of the robbers, and from Paul Bosch whom Jones in turn had recruited. We summarize their testimony.

Some two months before the final act, defendant Donald Stewart, a sometime bondsman and security officer, had learned that every other Thursday morning a police officer-courier left the Jefferson Bank carrying money for a police department payroll. Stewart solicited Raymond Jones to aid in robbing the courier as he left the bank. More men would be needed, so Jones recruited Paul Bosch and Guy Burroughs. The four men met often and various plans were discussed, agreed upon, and modified. Defendant Stewart supplied Bosch and Burroughs with pistols and ammunition. By one of the plans Burroughs, the look-out man, was to be armed with Stewart's carbine rifle and cover the robbery from a nearby rooftop to prevent interference. The final plan was for Jones and Bosch, with drawn pistols, to intercept the courier as he moved from the bank toward his car in an adjoining parking lot, then to rob and disable him. Burroughs was to protect Jones and Bosch from action by the bank's guard stationed in a building on the parking lot and was to take whatever action necessary to prevent the guard from interfering or pursuing. Meanwhile, defendant was to wait a block away in his parked car with motor running, in full view of the robbery, drive up, get Jones and Bosch, and escape.

From time to time the four men "cased the joint" and made "dry runs." (On one occasion they headed for the bank intending to carry out the robbery but their plans aborted when the car ran out of gas.)

The final plan was to rob the the courier on February 21, 1974. Meanwhile, treachery[1] had crept in. Paul Bosch decided to drop out and for reasons of his own told St.

Louis police in detail of the plot and its planning. In turn, police put Stewart, Jones and Burroughs under surveillance and got regular telephone reports from Bosch about preparations for the robbery. The police made detailed plans to thwart the robbery. On the morning of February 21 sixteen policemen were stationed in, around and atop the bank, most in civilian clothes. They had alerted the courier to the plot.

At the appointed hour defendant Stewart, Jones, Bosch and Burroughs drove to the bank and saw the courier's car in the parking lot. Each took his planned position, Jones and Bosch some sixty feet from the bank door, ready to intercept and rob the courier as he headed for his parked car with the payroll money. The courier left the bank door toward his parked car, but had walked only fifteen feet when, on signal from the police officer in charge, the police arrested all four "subjects." None had yet drawn a weapon nor threatened the courier.

We revert to the four requisite elements of an attempted crime. Here, there was clear evidence of intent to rob, of the possibility of robbing and of failure of consummation. The challenged element is the overt act. In 21 Am.Jur.2d, Criminal Law, at § 111, it is pointed out that "no definite line can be drawn" between preparation and the overt act necessary to constitute criminal attempt, but "it may be said that preparation consists in devising or arranging the means or measures necessary for commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made." Cases cited *infra* support this.

■ Although Missouri cases state principles governing attempts, none is so factually similar to precisely solve the issue here. We adopt the general principles of *State v. Thomas*, 438 S.W.2d 441[5–11] (Mo.1969): "An 'attempt' is an intent to do a particular thing which the law has declared to be a crime, 'coupled with an act towards the doing, sufficient, both in magnitude and in

1. Or public service in the eyes of the police.

proximity to the fact intended, to be taken cognizance of by the law, that does not concern itself with things trivial and small. Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act towards it falling short of the thing intended.' . . . To be found guilty of an attempt to commit a crime there must be some overt act in part execution of the intent to commit the crime, which falls short of the completion of the crime, which overt act must move directly toward the consummation of the crime. . . . Mere preparation is not sufficient to constitute an attempt to commit a crime. The defendant must have taken steps going beyond mere preparation, by doing something bringing him nearer the crime he intends to commit. 22 C.J.S. Criminal Law § 75(2), p. 231. The act need not, however, be the ultimate step toward, or the last proximate, or· the last possible, act to the consummation of the crime attempted to be perpetrated."

These principles in *Thomas* were applied where the State charged defendant with attempting to cash a bogus check. Defendant gave a storekeeper a false name, falsely claimed he was an employee of the maker, identified himself by a forged driver's license, and presented the check for cashing. He was arrested and contended on appeal he was not guilty of an attempt to pass the check since he had not committed an overt act by endorsing the check. Denying this contention, the court said: "It is reasonable to conclude that but for the alertness of the store's representatives the crime would have been consummated; that there was no inherent impossibility but rather an apparent possibility of committing the crime; that the intervening circumstances which thwarted the consummation of the crime occurred as a result of the actions of third parties, acting apart from and independent of appellant's will and control. Appellant's acts went beyond mere preparation; they went far enough toward the eventuality of obtaining the cash so as

to cross the line which divides criminal intention from criminal attempt." See also Comments on MAI–CR, Attempts, pp. 2–5.

We also look beyond Missouri decisions for answers to the question: What acts constitute an attempt? A logical factor is the proximity to the crime's completion. The Model Penal Code is enlightening. At §§ 5.01 and 5.02 it declares one guilty of attempt who purposely does an act constituting a substantial step planned to culminate in committing the crime.

Each case must be considered in the light of its own facts, and the problem is to determine at what point a defendant's acts go beyond preparation and are in the nature of perpetration.[2]

Other courts have considered cases factually similar to our problem and determined what acts have gone beyond preparation and become criminal perpetration.

In *People v. Stites,* 75 Cal. 570, 17 P. 693 (1888), the defendant and an accomplice intended to place a home-made bomb on a streetcar track. Defendant made the bomb and started with it to meet his accomplice at the planned place but was arrested in route. Upholding conviction for attempted bombing, the court reasoned: "Before he left house he was already fully prepared, and carried with him the instrument he was to use in effecting the crime he intended; nothing, in fact, remained for him to do but deposit it on the railway, at the time easily within his reach."

In *Stokes v. State,* 92 Miss. 415, 46 So. 627 (1908), the defendant paid a gunman to kill his victim. The defendant procured a loaded pistol and after dark went with the gunman to the intended place of ambush, where they expected the victim to appear. Police arrested defendant as he handed the pistol to the gunman. Although the victim had not yet appeared, the court upheld defendant's conviction for attempted murder.

In *Bell v. State,* 118 Ga.App. 291, 163 S.E.2d 323 (1968), the court upheld the suf-

---

2. For a discussion and illustrations of the distinction, see Perkins, Criminal Law, Second Edition, pp. 557–561.

ficiency of an indictment charging that defendant intended to destroy a place of business and entered thereon with dynamite in his possession. Without specifically distinguishing between preparation and perpetration, the court viewed the indictment in the light of Georgia's statutory definition of attempt as "*any* act toward the commission of such crime." The court held that "it is sufficient if there is *an* act done in pursuance of the intent, and *more or less* directly tending to but falling short of, the commission of the crime."

In *People v. Gibson,* 94 Cal.App.2d 468, 210 P.2d 747 (1949), the defendant intended to burglarize a store. Late at night when walking down an alley carrying a ladder and a sack of burglar tools he was arrested near the store. On appeal for attempted burglary, the court illustrated the principle of attempted crime: "When a man threatens to kill his neighbor then (1) buys a gun and (2) conceals himself on the neighbor's premises, his two acts are clearly done in furtherance of his declared purpose." Having thus distinguished the elements of preparations and perpetration, the court upheld defendant's conviction for attempted burglary, saying: "Slight acts in furtherance of a criminal purpose . . . are sufficient [to constitute an attempt] when they constitute a direct movement towards the consummation which was prevented by an agency inhibitive of the offense."

In *People v. Gormley,* 222 App.Div. 256, 225 N.Y.S. 653 (1927), the court upheld an attempted robbery conviction where defendants were found armed and lurking near a bank, intending to rob a messenger, but before the messenger appeared police arrested them. The court upheld defendants' conviction for attempted robbery.

These out-of-state cases upheld convictions based on an overt act, that is, an act going beyond preparation and constituting perpetration. Better to view the case before us, we contrast these out-of-state convictions with hypothetical cases that do *not* constitute attempts because they do not go beyond preparation. We quote Perkins Criminal Law, Second Edition, page 560:

"A, intending to murder X, conceals a long dagger in his clothing and goes out to discover where X may be found. A is arrested on a charge of attempting to murder X before receiving a lead as to X's whereabouts. . . . B also intends to murder X but has a different plan. He has prepared some poisoned candy, knowing X is very fond of that kind, and intends to send it to X. B is arrested on a charge of attempted murder while the poisoned candy is still in his possession. . . . C has placed combustibles in X's dwelling house intending to return and set the fire at a later time. He is arrested on a charge of attempted arson while at his own home waiting for the appropriate moment. . . . D intends to break into X's house at midnight and steal certain valuable goods kept there. With this in mind he has procured an effective set of burglar's tools, but is arrested in his own home about noon on a charge of attempted burglary. . . . E has obtained some counterfeit foreign treasury notes which he intends to pass as genuine. He received them late at night with no thought of using them until the following day. He is arrested that night on a charge of attempting to utter counterfeit foreign securities."

These examples of no attempt each show a negative factor precluding conviction. We find no such negative factors in our case.

■ We must now evaluate our case, applying the general principles recited above in *State v. Thomas,* 438 S.W.2d 441[5–11] (Mo.1969), and considering the applications of those principles in the out-of-state cases cited above. So considered, we hold that when defendant Stewart and his three accomplices conspired to rob the courier, agreed upon detailed plans as to where, when and how each man was to do his part and escape, then armed themselves with deadly weapons—all this might be considered mere preparation. But when the four men drove to the bank, alit and took up their assigned positions, then being armed, ready, willing and able to intercept, assault and rob the courier, they had then

gone beyond mere preparation. This conduct, under the principles announced in *Thomas, supra,* was "an act towards the doing, sufficient, both in magnitude and in proximity to the fact intended, to be taken cognizance of by the law . . . ."

We hold the evidence supported the charge of attempted robbery.

■ Having denied defendant's challenge to the sufficiency of the evidence, we look to his contention the trial court erred in admitting into evidence a carbine rifle discovered by a warrantless search of his getaway car some hours after defendant's arrest when police had towed the car to a garage.

The State admits the carbine rifle was not seized as an incident to defendant's arrest, but contends the police had reasonable cause to believe defendant's car contained material evidence of the attempted robbery. Defendant had supplied his accomplices with pistols and shotguns and at one point Guy Burroughs had defendant's carbine rifle. Police knew that at one of the early planning sessions defendant had planned that at the robbery Guy Burroughs would be on a rooftop with the carbine to prevent interference with the robbery. Since defendant's automobile was an instrumentality of the attempted crime, its search was a valid step in investigating the robbery and preserving evidence pertinent to it. *State v. Barngrover,* 513 S.W.2d 751[1, 2] (Mo.App.1974), and see *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). We find no prejudicial error concerning the carbine rifle.

Concerning the charge of carrying a concealed weapon, defendant contends the court erred in admitting into evidence the pistol police took from him as he sat in his getaway car. Defendant concedes the taking was incidental to his arrest but contends the arrest was improper since an attempted robbery was not proven. We have ruled against defendant on his premise, so his conclusion falls.

Judgment affirmed.

McMILLIAN and RENDLEN, JJ., concur.