**STATE of Missouri, Respondent,**

**v.**

**Terry WALKER, Appellant.**

**No. 52727.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 5, 1988.

Douglas L. Levine, Ferguson, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, Terry Walker appeals from convictions of two counts of rape, § 566.030, RSMo 1986; and one count of attempted sodomy, §§ 564.011 and 566.-060, RSMo 1986. Defendant was sentenced, as a prior offender, to twenty years on each count of rape and twenty years on the attempted sodomy charge, all sentences to run consecutively. We affirm.

The appeal raises three issues. First, whether the trial court erred in overruling defendant's motion for Judgment of Acquittal on the basis that "the evidence is insufficient as a matter of fact and law" as to the count of attempt to commit sodomy. We find that the evidence is sufficient to support the conviction, because the action that defendant and his accomplice engaged in amounted to a substantial step toward the commission of that offense. *See*, §§ 564.011 and 562.041, RSMo 1986.

Second, whether the trial court erred by precluding defendant from inquiring of the prospective jurors, whether they had ever run into a situation where they [the jurors] had walked up to someone, or, someone had walked up to them, believing that they knew that person, when, in fact, they were mistaken or if they had ever been mistaken for someone else. Because a trial court

necessarily and properly has considerable discretion in control and conduct of voir dire examination and an appellate court will interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the defendant, we find no error. *State v. Scott,* 515 S.W.2d 524, 527 (Mo.Div.1 1974).

Third, whether the trial court erred in overruling defendant's motion to suppress identification because the defendant was the only person who appeared in two lineups, thus making the lineups inherently unfair. We find the point was waived, due to the absence of a timely objection during the trial; and there was no error, plain or otherwise.

■ In reviewing the record to determine whether there is sufficient evidence to sustain a conviction, the state's evidence, after conviction, must be accepted as true, together with all reasonable inferences deductible therefrom, and all evidence and inferences to the contrary must be disregarded. *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975). In addition, our sole determination is whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Dunavant,* 674 S.W.2d 685 (Mo.App.E.D.1984).

Briefly, the evidence indicates that at approximately 11:00 p.m. on December 8, 1985, the 16 year-old victim was walking alone, while drinking a beer, on a street in the City of St. Louis. The victim was approached by a stranger who began harassing her. He continued to harass her until another stranger, Russell Wangler, told him to leave her alone. Wangler and the victim introduced themselves. They then decided to drink a few beers; the victim got into Wangler's van and drove to a 7–11 store with him. After purchasing beer and driving around for one and one-half hours, they parked in an alley, where they were joined by the defendant.

The three then drove around for a while longer, and at one point went to Illinois to purchase beer. When they returned to St. Louis, Wangler parked the van at the side of the highway. The victim then attempted to get out of the van, saying she wanted to "stretch her legs." Wangler denied her exit from the van and, with the help of the defendant, carried her to the back of the van.

The defendant held the victim down and Wangler removed her clothing from the waist down. The defendant then moved to the front of the van while Wangler raped her. Wangler then tried to make the victim have oral sex with him. However, the victim screamed that she would get sick and Wangler did not persist. The defendant then moved to the back of the van and raped the victim.

Thereafter, Wangler again went to the back of the van and lay down next to the victim. He went through her purse and slapped her several times for having "too many guy's [sic] phone numbers." He then threw the victim's clothing at her and told her to get dressed.

The defendant exited the van soon after this and the victim attempted to follow. However, Wangler grabbed the victim and placed her back into the van. After a struggle, the victim finally escaped and flagged down a passing motorist. The motorist drove her until they found a police officer, who took her to the hospital.

About three weeks later, on January 2, 1986, the victim viewed a physical lineup of six individuals. From that lineup, she identified the accomplice, Russell Wangler, without hesitation. The next day, January 3, 1986, the victim viewed a photo lineup of six individuals, identifying the defendant. On January 13, 1986, the victim viewed a physical lineup, consisting of four individuals. The victim again identified the defendant without hesitation. The only individual who was the same in both the January 3 photo lineup and the January 13 lineup was the defendant.

■ The first issue the defendant raises is that the trial court erred in overruling his motion for Judgment of Acquittal on the basis that "the evidence is insufficient as a matter of fact and law" as to the count of attempt to commit sodomy. De-

fendant asserts that mere preparation and request by the accomplice to commit the act is insufficient to constitute an attempt to commit a crime, citing *State v. Stewart,* 537 S.W.2d 579 (Mo.App.E.D.1976). We observe that *Stewart,* being a 1976 decision, is a pre-code case. Before The Criminal Code was enacted in 1977, effective January 1, 1979, the Missouri statutes defined attempt only partially and obliquely, and one had to look to case law to determine its elements. MAI–CR Comments, Attempts, pp. 1–2. Since the enactment of The Criminal Code, the offense of an attempt to commit an offense is part of the Missouri statutes.

Section 564.011, RSMo 1986 defines an attempt as follows:

> A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Thus, there are two basic elements to attempt, namely (1) a purpose to commit the offense, and (2) the doing of an act which is a substantial step toward the commission of that offense. The language, "strongly corroborative of the firmness of the actor's intent" is the gist of the "substantial step." The conduct must be indicative of the defendant's purpose to complete the offense. What act or conduct will constitute a substantial step will depend on the facts of the particular case. *The New Missouri Criminal Code: A Manual for Court Related Personnel,* pp. 9–1 and 9–2.

■ Here, the issue revolves around an attempted sodomy. "Sodomy" is defined in § 566.060, RSMo 1986 as follows:

> A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

Section 566.010, RSMo 1986 defines "deviate sexual intercourse" to mean "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." Defendant asserts that no substantial step was taken towards the commission of this crime because there was no overt act in furtherance of the sodomy. The evidence, however, shows otherwise. After driving around in the van with the defendant and Wangler, the victim tried to leave the van. Wangler told her she couldn't leave. Then the defendant's hand went over her mouth and the defendant picked her up and took her to the back of the van. The defendant held her arms while Wangler took her clothes off. When Wangler raped her, the victim screamed; the defendant said, "If you don't shut up I'm going to bring that knife back there." After Wangler raped her, the victim said, "He tried to make me have oral sex with him." Wangler didn't make her do it, but then defendant raped her. Here, the conduct of the defendant in carrying the victim to the back of the van and holding her arms down while her clothes were being taken off her would constitute conduct from which a jury could find "conduct which is strongly corroborative" of the defendant's purpose to commit rape or sodomy. That conduct, joined with the actions of his accomplice trying to make the victim perform oral sex, constitutes sufficient evidence to sustain the defendant's conviction for attempted sodomy. Therefore, we hold that a substantial step was taken towards the commission of the offense of sodomy and deny defendant's first point.

The second issue raised by defendant is whether the trial court erred in precluding defendant from inquiring of prospective jurors whether they had run into a situation where either they [the jurors] had walked up to someone, or, someone had walked up to them believing that they knew that person, when, in fact, they were mistaken or if they had ever been mistaken for someone else. Defendant claims the question was asked to discover any preconceived ideas or prejudices of the prospective jury panel, and the trial court erred in precluding the question.

■ The examination of jurors as to their qualifications is conducted under the

supervision of the trial court and the nature and extent of what questions counsel may ask are discretionary with the trial court. The exercise of that discretion will be disturbed on appeal only when the record shows a manifest abuse of that discretion. *State v. Lumsden,* 589 S.W.2d 226 (Mo. banc 1979) Further, the defendant bears the burden of demonstrating prejudice as a result of the trial court's refusal to permit the inquiry. *State v. Gilmore,* 681 S.W.2d 934, 945 (Mo. banc 1984). And, an appellate court will interfere with the trial court's exercise of discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the defendant. *State v. Scott,* 515 S.W.2d 524, 527 (Mo.Div.1 1974).

■ Defendant, in his point, claims that the inquiry "was intended to determine the bias, interest and/or prejudice of the prospective jurors." We are unable to discern how either a positive or negative answer to the question would show "bias, interest and/or prejudice." Defendant, in the argument portion of his brief, does not support his assertion. Further, even if the ruling of the court was erroneous, which we do not decide, the defendant has not established that there was a real probability that he was injured by refusing to allow the question to be answered. Here, the facts show that the victim was with the defendant in the van for a considerable period of time before the offenses occurred, they sat close to each other talking back and forth, and drove into Illinois to get beer. At trial, defendant did not object when the victim identified the defendant. Defendant has not demonstrated prejudice and the point is ruled against him.

■ The last issue raised by defendant is whether the trial court erred in overruling defendant's motion to suppress identification because the defendant was the only person who appeared in two lineups, thus making the lineups inherently unfair. In addition, defendant asserts that his presence in both lineups did not permit an independent identification by the victim, at trial. We disagree.

The point has been waived. At trial, the victim was the state's first witness. She described and identified the defendant in court. A motion to suppress evidence, including "any and all testimony regarding any observations made of defendant's person while he was under arrest," was filed by defendant prior to trial. A pre-trial hearing was held on the motion, but the trial court overruled it. At trial, the victim's identification testimony was introduced into evidence without objection.

"The well-established rule in Missouri is that even where a pretrial motion to suppress and a motion for a new trial are made, nothing is preserved for review in the absence of a timely objection during the trial." *State v. Greenlaw,* 543 S.W.2d 523, 525 (Mo.App.E.D.1976). His point, therefore, has not been preserved for review and we review it only for plain error. *State v. Grounds,* 676 S.W.2d 10 (Mo.App. E.D.1984).

■ Our review of the record finds no error, plain or otherwise, in overruling the motion to suppress. Determination of the reliability of identification depends on the totality of the circumstances. *State v. Hurst,* 612 S.W.2d 846 (Mo.App.E.D.1981). The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and identification. *State v. Williams,* 717 S.W.2d 561, 564 (Mo.App.E.D.1986).

■ Here, the victim was with, and saw, the defendant for several hours, most of the time being within a few feet of him. In addition, the victim unequivocally identified the defendant. There were two out-of-court identifications. The first, on January 3, 1986, was less than a month after the crimes occurred. Out of six photographs, without any hesitation, she picked the defendant. On January 13, 1986, she picked the defendant out of a physical lineup; the identification was immediate. Finally, the transcript does not reveal any undue sug-

gestiveness in the photo display or the line-up which might taint the identification. Thus we conclude that the trial court properly overruled the motion to suppress the identification.

The judgment of the trial court is affirmed.

SIMON, P.J., and CRANDALL, J., concur.