**STATE of Missouri, Respondent,**

v.

**Michael E. LETCHER, Appellant.**

**No. WD 40778.**

Missouri Court of Appeals,
Western District.

May 9, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Sean D. O'Brien, Public Defender, Leon Munday, Asst. Public Defender, argued, Kansas City, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., argued, Jefferson City, for respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

NUGENT, Judge.

Defendant Michael E. Letcher appeals from his conviction by a jury of first degree arson. The defendant argues on appeal that the trial court erred in refusing to give an instruction on the lesser included offense of second degree arson; in admitting expert testimony; in failing to grant a judgment of acquittal; in refusing to allow particular questions on voir dire; and in failing to grant a mistrial after locking the courtroom doors during the trial. We affirm the judgment.

Mr. Letcher's conviction arose from a pre-dawn fire at the McKinzy house in Kansas City. Ernestine McKinzy, her son Edward McKinzy, and her brother, U.L. Woods awakened after three o'clock that morning. They smelled what they thought was natural gas or gasoline and unsuccessfully searched for the source of the odor.

Later, Mrs. McKinzy looked out of her upstairs window and saw a man she recognized as defendant Letcher walking down the street. She had known him for eighteen years. The day before he had threatened the McKinzys in retaliation for an argument between his mother and one of the McKinzy family. She heard the defendant's mother, who is her next-door neighbor, yell, "Mike, Mike." She then looked out her front door and saw defendant Letcher approach the house with something in his hand.

When Mrs. McKinzy saw the defendant approaching, she called the police emergency number to report danger to her house. While on the phone, she heard a loud noise and saw smoke and fire on the front porch. When he heard the noise, Edward McKinzy went to the window and saw the defendant running from the yard. He recognized the braids in Mr. Letcher's hair.

The McKinzy family acted quickly to extinguish the fire. They attacked it with water from the kitchen, a garden hose, and a blanket, and confined it to the porch. A separate fire burned the grass and damaged a car parked in the yard. The McKinzys quickly extinguished that fire as well.

Detective William Lutman investigated the fire. He testified that it damaged the porch, its roof, charred the front window frame, and cracked the window. Various items on the porch also burned. He found no fire damage inside the house.

Officer Balfour Rast of the police Arson and Bomb unit also investigated the fire scene and testified as an expert witness. He determined that a Molotov cocktail[1] caused the fire on the porch and that the fire in the yard likely arose after someone poured gasoline on the yard and ignited it. He also testified, over the defendant's objection, that if left unchecked, the fire would have spread into the house and quickly up the staircase. The court would not allow Officer Rast to testify that the fire endangered the lives of the house's occupants.

The McKinzys told Detective Lutman that Mr. Letcher started the fire. The detective arrested the defendant that evening. Mr. Letcher denied having started the fire. He testified at trial that he had gone to several other places that night and did not arrive at his mother's house until after the fire had been extinguished. The defendant appeared at trial only to be identified by witnesses and to testify. By his own choice, he appeared in jail clothes.

Using a remote control locking device installed at the bench, the trial judge locked the courtroom doors during the defendant's testimony. Defense counsel became aware of the locking of the door only after several spectators tried to leave the courtroom. The jurors could also see those unsuccessful attempts. The judge explained that several people had entered and left the courtroom during the defendant's testimony and that, in the judge's opinion, the banging doors disrupted the jurors' attention to the testimony. He locked the doors to prevent further disruption. The court denied the defendant's motion for a mistrial based on the court's action in locking the doors.

The court refused the defendant's proposed instruction for second degree arson. The jury returned a verdict finding Mr. Letcher guilty of arson in the first degree, and the court entered judgment on that verdict. From that judgment the defendant now appeals.

Because Mr. Letcher's first and third points of error rely largely on our disposition of his second and fourth points, we will consider the latter points first. In his second point, he argues that the court abused its discretion in allowing Officer Rast to

---

**1.** Detective Lutman described a Molotov cocktail as a bottle filled with flammable liquid and ignited with a wick made of a rag or paper. When the wick is lighted and the bottle is thrown against a wall it will explode and spread a fire. Soldiers first used the devices against tanks in the Spanish Civil War in 1936 and Hungarian resistance fighters later used them against Soviet T–34 tanks in 1956. When the Soviet infantry used the grenades against German armor during World War II, German soldiers named them after Soviet foreign minister V.M. Molotov. *See* John Weeks, *Men Against Tanks, A History of Anti–Tank Warfare* (New York, 1975), pp. 31 and 123; John A. English, *On Infantry* (New York, 1981 and 1984) p. 97.

testify to the likely course the fire would have taken if left unchecked, because the officer qualified only as an expert in the cause and origin of fires, not in the spread of fires. Alternatively, in his fourth point, he argues that because that subject falls within the normal understanding of jurors, they needed no expert testimony.

The trial court may exercise its sound discretion in determining whether to admit expert testimony. We will disturb that decision only if the trial court clearly abuses its discretion. *State v. Marks,* 721 S.W.2d 51, 55 (Mo.App.1986). The court's discretion extends to the decision regarding the expert's qualifications. *Id.* at 56. A witness may obtain his expertise through both experience and through education. *Id.*

■ Here, the court did not abuse its discretion. Officer Rast has attended several fire investigation training courses and had actually investigated about four hundred fires. In both his training and in his experience he had had the opportunity to observe the progression of such fires. Although his investigations normally concentrate on the cause and origin of fires, his experience gained through observing fires progress qualifies him to testify on that matter. Moreover, investigation of the causes and origins of fires necessarily involves the study of the paths such fires take. A study of how fires have progressed should logically prepare one to determine how other fires will progress. The trial court properly qualified Officer Rast as an expert.

■ The trial court may only admit expert testimony, however, if it concerns a subject about which the layman may not be expected to draw a reasonable conclusion from the facts in evidence. *Housman v. Fiddyment,* 421 S.W.2d 284, 289 (Mo.1967) (en banc). Fortunately, most laymen will not have the opportunity to observe the progression of a house fire. That subject comes clearly within the experience of fire fighters and arson investigators. Officer Rast's testimony about the probable path of the fire at the McKinzy residence served its intended function—to assist the jury in reaching its conclusion on the facts. *State v. Marks, supra.* The court properly admitted the expert testimony.

■ Mr. Letcher argues in his third point that the court erred in failing to grant a judgment of acquittal in that no substantial evidence supported a finding that the fire subjected the inhabitants of the house to danger of death or serious injury. To support a conviction for arson in the first degree the state must prove beyond a reasonable doubt each of the following elements: (1) that the accused knowingly damaged an inhabitable structure; (2) by starting a fire or causing an explosion; (3) with persons then present or nearby; and (4) thereby recklessly placing those persons in danger of death or serious physical injury. § 569.-040.[2]; MAI–CR3d 323.06.

The defendant does not challenge the proof of the first three elements. His challenge to the sufficiency of the evidence on the fourth element rests largely on 'his assertion that the court should not have admitted Officer Rast's testimony. We held earlier that the court properly admitted that testimony. Officer Rast's opinion that the fire would have quickly spread to the interior of the house, and that it would have produced deadly gas, provided substantial evidence to establish a danger of death or serious physical injury to the occupants of the McKinzy house. Therefore, the state presented substantial evidence to support each element of arson in the first degree.

■ That brings us back to the defendant's first point—that the trial court erred in failing to instruct the jury on the lesser included offense of arson in the second degree. Second degree arson consists of two elements: (1) knowingly causing damage to a building or inhabitable structure; and (2) causing that damage by setting a fire or causing an explosion. *See* § 569.050. Proof of the first two elements of first degree arson will prove second degree arson. Therefore, second degree

2. All sectional references are to Revised Statutes of Missouri, 1986.

arson is a lesser included offense of first degree arson. *See* § 556.046.

■ Section 556.046.2 requires the trial court to instruct the jury on a lesser included offense only when the evidence provides some basis for the jury to acquit the defendant of the charged offense and convict him of the lesser offense. *State v. Olson,* 636 S.W.2d 318, 321 (Mo.1982) (en banc). When strong and substantial evidence supports each element of the charged offense, the court need not give the lesser included instruction. *State v. Perkins,* 679 S.W.2d 410, 412 (Mo.App.1984). In *State v. Moore,* 729 S.W.2d 239 (Mo.App.1987), the court discussed the quantum of evidence necessary to permit the trial judge to refuse a lesser included offense instruction. It concluded that the instruction need not be given when a compelling inference supports a challenged element of the charged offense, but the instruction should be given when only a permissive inference supports any element. *Id.* at 240.

We conclude that compelling evidence supports the jury's conclusion that defendant Letcher placed the McKinzys in danger of death or serious bodily harm. Although the McKinzys extinguished the fire before it entered the interior of their house, that does not mean that they faced no danger. Officer Rast testified that such a fire, if left unchecked, would eventually consume the house and emit poisonous gases.

The defendant's actions showed a reckless indifference to the safety of the occupants of the house. The McKinzys' prompt response to the fire did not reduce the defendant's recklessness. When one shoots a gun at a crowd and hits no one, only good fortune prevents the shooter from becoming a murderer. Mr. Letcher threw a Molotov cocktail at an occupied house at a time when most people are sleeping. The McKinzys' efforts allowed him to avoid becoming a murderer, but they did not prevent his becoming a first degree arsonist. The trial court properly refused to give the instruction on second degree arson.

■ Mr. Letcher contends in his fifth point that the trial court improperly limited voir dire. Defense counsel sought to ask members of the panel whether they had ever been the victims of misidentification. The court sustained the state's objection to the question, finding that it improperly injected argument into the voir dire. The defendant argues that because he was unable to elicit such information from prospective jurors he could not intelligently exercise his peremptory challenges.

To establish reversible error in the trial court's refusal to permit a particular question on voir dire, the defendant must show that the court abused its discretion and that the defendant suffered prejudice as a result of the court's erroneous decision. *State v. Walker,* 743 S.W.2d 99, 103 (Mo. App.1988); *State v. Grant,* 702 S.W.2d 857, 863 (Mo.App.1985). We must determine the possibility of error in light of the voir dire's purpose—to allow counsel to detect bias so that he may intelligently exercise his peremptory challenges. *Grant, supra.*

The defendant argues that the court's refusal to allow him to ask the jurors whether they had ever been the victim of mistaken identification denied him the ability intelligently to exercise his peremptory challenges. In *State v. Walker, supra,* the trial court refused to allow the defendant to question jurors regarding their experience with mistaken identification. Unable to discern how either a positive or negative answer to the question would show bias, interest or prejudice, the reviewing court affirmed the trial court's ruling. *Id.* at 103. The court also noted that in light of the fact that the victim had ample opportunity to observe and identify the defendant, he had failed to demonstrate any prejudice from the trial court's ruling. *Id.* Here, Mrs. McKinzy and her son, the identifying witnesses, had known the defendant for years. Edward McKinzy accurately described the defendant's clothing and the distinctive braids he wore in his hair. We find neither error nor prejudice in the trial court's ruling.

■ Finally, the defendant charges the trial court with error in refusing to grant a

mistrial after it locked the courtroom doors during the defendant's testimony. He contends that the court's action deprived him of his Sixth Amendment right to a public trial. He also argues that the locked doors had prejudicial effect on the jurors by giving them the impression that he is a dangerous criminal. We disagree.

"A trial court has the duty to make such orders as may be necessary to secure a safe and quiet trial." *State v. Davis*, 547 S.W.2d 482, 489 (Mo.App.1976). The court may exercise considerable discretion in controlling the courtroom, *State v. Pendergrass*, 726 S.W.2d 831, 832 (Mo.App.1987), but it should exercise that discretion in a manner that avoids prejudice to the defendant. *State v. Davis, supra.* Here, the record reflects the court's concern with an orderly trial. The court locked the doors to prevent noise from banging doors after it had observed the disruptive effect that noise had on the defendant's testimony. Therefore, the court prevented prejudice to the defendant by allowing him to present his version of the facts to an attentive jury. Under similar circumstances we have held that such action by the trial court did not deprive the defendant of his right to a public trial. *State v. Williams*, 742 S.W.2d 616, 621 (Mo.App.1987) (court posted a guard at doors and directed the guard to allow entry or exit only during recess). We find no abuse of discretion.

Accordingly, we affirm the trial court's judgment.

All concur.